# Armor *v.* The State.

*Indictment for Murder.*

1.  *Conduct and declarations of defendant; when admissible against him.*—The conduct and declarations of the defendants on the evening of the homicide, from the time they came to the house where the deceased was living with her son-in-law, until the commission of the crime, are admissible evidence against them, when parts of one continuous transaction, although occurring between the defendants and the son-in-law, in the absence of the deceased, and outside the house where she was, and not shown to have any immediate connection with the crime.

2.  *Drunkenness as defense; to what witness may testify.*—Whether the defendant, at the time of the homicide, was so drunk as to be incapable of forming a design or intent, is a conclusion to be drawn by the jury from all the evidence before them, and not a question of fact to which a witness may testify.

3.  *Proof of character; weight and effect as evidence.*—In all criminal prosecutions, whether of felony or misdemeanor, the accused may prove his good character, not only when a doubt exists on the other proof, but even to generate a doubt of his guilt; but its value varies according to the proof to which it is opposed, and in connection with which it must be weighed and estimated by the jury; and it does not shield from the consequences of a criminal act, proved to the satisfaction of the jury, though it may raise a reasonable doubt of the act having been done with a criminal intent.

FROM the Circuit Court of Russell.

Tried before the Hon. JAMES E. COBB.

The indictment in this case was found in October, 1879, and charged that the defendants, Scott Armor and Ivey Doles, "unlawfully and with malice aforethought killed Susan Calhoun, by cuting her with a knife." The defendants each pleaded not guilty, and were jointly tried. The jury acquitted Doles, but found Armor guilty of murder in the second degree, and fixed his punishment at imprisonment in the penitentiary for the term of ten years. The case is brought to this court by Armor, on a bill of exceptions reserved by him during the trial, as follows :

"The State introduced General Miles as a witness, who testified, that on the second Saturday night in June last the defendants came to his house, where the deceased lived, a short time after dark; that he heard them coming, hollering and whooping, before they got there; that they came into

his yard, near the fence, and his dog ran out and barked at them; that they came into his house, and Doles came in and saw Susan Calhoun, the deceased, and said, 'there was his old friend that drank whiskey with him last Christmas,' and asked her to take a drink with him, which she did; that he then asked witness to take a drink with him, and witness did so; that they then left the house, it being about 8 o'clock at night; that the night was dark, and the rain drizzling; that witness, his children, and the deceased, who was his wife's mother, and lived with him, were at home that night; that the defendants returned, a short time afterwards, to the yard fence, and called 'Hallo' twice; and that he went out from the house, near which they were. The State then offered to prove, by said witness, that said Armor told him to come out there near the fence, 'that he intended to give him hell;' that witness told them he had no business out there, and would not go, and started back to his house, and had gone about eight or ten steps, and got around the house, when said Doles ran up behind him, and put both arms around him, so that he could not raise either of his arms; that he asked them what was the matter, and what they meant; that Doles told Armor, 'Take him up, and let's carry him out,' and caught witness under the leg, while Armor caught him by the pantaloons down at the foot; that his pantaloons slipped up to his knee, and he straightened out his leg, and tripped up Armor, who fell on the ground: that he saw Armor drawing his knife as he got up, and called out to Doles to let him loose, 'that man' (said Armor) 'was going to cut him;' that Doles said no, he would not; that he and Doles turned around once or twice; that Armor got up, and made several licks with his knife, witness avoiding the blows, and cut him on the head severely; that he then got loose from Doles, and ran off, and went over to Mr. Chappell's, and had his wound hastily dressed, and returned; that the deceased was in the house when he left, the door being opened, and when he returned, in about a half-hour, or three-quarters, he found her dead on the floor, with a wound in the neck made by a knife, or by some other sharp instrument; and that he never saw any person cut the deceased. The defendant Armor objected to all that portion of the testimony of said witness which showed what Armor said to him, and what Doles and Armor did to him, in the absence of the deceased; also, to that portion of said evidence which showed that Armor cut the witness; and to all that portion which showed that there was a difficulty between said Doles and Armor and the witness in the absence of the deceased, and to each part thereof separately." The grounds of objection to this evidence, as

[Armor v. The State.]

specified, were, " because it was illegal;" " because it was irrelevant;" " because it was no part of the *res gestæ;*" " because it was a separate and different transaction from that of the killing;" " because there was no connection between this difficulty and the killing of the deceased." The court overruled each of these objections, and allowed the witness to testify to the facts as stated; and the defendant duly excepted.

" The State then introduced one Pitts as a witness, and offered to prove by him that the deceased was sixty or seventy years old;" to which evidence the defendant objected, on the ground that it was illegal and irrelevant, and excepted to the overruling of his objection. " There was evidence tending to show that, after the witness Miles had left, the defendants entered the house where the deceased was, and that said Armor cut by stabbing her in the neck, and that she died from the cut; also, that this was in Russell county, in June last; and that she was a woman of bad and turbulent, and dangerous character; and that said Armor is a man of good general character, and has been possessed of such good character for the last twenty years, in the neighborhood in which he has lived; and that the witness Miles was a man of very bad general character, and unworthy of credit in a court of justice. The defendants then offered to prove, by C. O. Brunson, that they left Hatchechubbie about dark on the evening of the killing; and that they were intoxicated, and so much under the influence of liquor as hardly to be able to exercise locomotion, or to talk intelligibly or intelligently, and *so much so as to render them incapable of forming a design or intent.*" On objection by the State, the court ruled out the italicized portion of this evidence; and the defendant excepted to its rejection. " The defendant then moved the court to exclude from the jury all that' portion of the evidence of the witness Miles before objected to, and on the same grounds then specified;" which motion the court overruled, and the defendant excepted.

" The court charged the jury in writing, at the request of the defendant Armor, and, among other things, charged as follows: 'No man is less amenable than another to the penalties of the law, if its commands are disregarded. All, whether of good or bad character, are liable to punishment, and should receive punishment, when they violate the laws of the land. *Proof of good character, then, is not permitted to go to the jury for the purpose of shielding the defendants from the consequences of their conduct, but simply as a circumstance to be considered by the jury, along with the other evidence in the case;* and if, from all the evidence, you believe the defend-

ants, or either of them, to be guilty, you should so say by your verdict, as firmly against a man of good character as of bad." To the italicized portion of this charge the defendant Armor duly excepted.

W. D. ROBERTS and W. D. WOOD, for the defendants.

H. C. TOMPKINS, Attorney-General, for the State.

BRICKELL, C. J.—All the occurrences of the evening, from the time Doles and Armor first came to the house of Miles, until the killing of the deceased, including their several declarations, were but parts of a continuous transaction, and there was no error in permitting the State to prove them.

2. Whether, immediately before, and at the time of the homicide, the intoxication of the appellant was so great as to render him incapable of forming a design, or intent, was a conclusion to be drawn by the jury from the facts before them; in reference to which, a witness could not aid them by the expression of an opinion.—*Gassenheimer v. State,* 52 Ala. 313; *Johnson v. State,* 17 Ala. 618.

3. It is now too well settled, by numerous decisions of this court, to be controverted, that in all criminal prosecutions, whether of felony or misdemeanor, the accused may prove his good character, not only when a doubt exists on the other proof, but even to generate a doubt of his guilt.—*Felix v. State,* 18 Ala. 720; *Harrison v. State,* 37 Ala. 154; *Dupree v. State,* 33 Ala. 380; *Hall v. State,* 40 Ala. 698. There may be cases, in which the evidence against the accused would satisfy the jury of guilt, if his character was unknown; but, that shown to be good, and that he had never indicated the particular wicked traits involved in the crime charged, would, perhaps, produce a reasonable doubt of guilt in the minds of the jury. So, there may be cases, in which the evidence of guilt is so clear and convincing, that no evidence of character can weaken its force. Character is a fact fit to be proved on behalf of the accused, on every criminal accusation; but its value, intrinsic or relative, will vary according to the proof to which it is opposed, and in connection with which it must be weighed and estimated by the jury. It does not shield from the consequences of a criminal act, proved to the satisfaction of the jury; though it may raise a reasonable doubt of the act having been done with the criminal intent.

We find no error in the instructions to the jury, to which exceptions were taken, nor in the other rulings of the court.

The judgment is affirmed.