66 So.2d 557

## MASON v. STATE.

### 6 Div. 520.

Supreme Court of Alabama.

June 30, 1953.

Rehearing Denied Aug. 6, 1953.

Chas. Cleveland, Birmingham, for appellant.

Si Garrett, Atty. Gen., and Maury D. Smith, Asst. Atty. Gen., for the State.

STAKELY, Justice.

James Edward Mason was indicted for the offense of robbery. Upon a plea of not guilty the case was tried before a jury which returned the verdict of guilty and fixed his punishment at death. The appeal comes here under the automatic appeals act.

On the night of September 6, 1952, Ernie Gilbert was working for the Peoples Oil Company as a filling station attendant. The filling station is located at 531 3rd Avenue North in Birmingham, Alabama. He operated the station from 11:00 p. m. to 7:00 a. m. About 12:15 a. m. three negroes walked up to the station and stated that they wanted a cold drink. At the time Ernie Gilbert was in the driveway of the station raking gravel and he told them he didn't have any drinks. He continued with his work until the three negroes walked over to him with open knives in their hands. The appellant with a knife in his hand told Ernie Gilbert to give him his money. When he hesitated they pushed him down on the gravel. Thereupon the appellant took from Ernie Gilbert his money changer, pocket knife, a lighter and about nineteen dollars in currency. After taking the money the appellant asked Ernie Gilbert to come on the other side of the station. When they got to the rear of the station appellant pushed Ernie Gilbert down and started stomping and kicking him. As a result of this beating Ernie Gilbert stayed in the Jefferson-Hillman Hospital for a period of seventeen days. According to tendencies of the evidence he is now permanently injured, unable to work and often returns to the hospital for treatment.

Ernie Gilbert identified James Edward Mason as the man who held the knife on him, took his money and other valuables and further identified him as the man who took him back of the filling station and beat him. After the three men had gone, he called police headquarters and detective J. M. McDowell, a city detective in Birmingham, went to the station and after hearing from Ernie Gilbert the details of the robbery, took Ernie Gilbert to the hospital.

J. M. McDowell testified that the defendant was apprehended in Toledo, Ohio, on September 17th and that he along with Mr. J. T. Holtam, went to Ohio for the purpose of bringing him back to Alabama.

He further testified after a proper predicate had been laid that the defendant made a signed statement in his presence. According to this statement which was introduced in evidence, the defendant went to the Peoples Oil Company on the night of September 6th for the purpose of robbing it and that he held a knife on Ernie Gilbert and took the money from his person. He denied, however, stomping and kicking Ernie Gilbert.

The state also made proof of the following. On the morning of September 8, 1952, C. W. Fisher was operating a filling station for the Direct Oil Company at First Avenue and 20th Street South in the City of Birmingham, Alabama. C. W. Fisher was out front whitewashing one of the gasoline pumps, when the defendant and four other negroes walked up. One of them asked C. W. Fisher if he could use the telephone. C. W. Fisher told him that he could and then one of the negroes asked for two nickels in change for a dime. As he was handing the two nickels to the man, defendant grabbed him by the arm and said, "You are going in the back room." The defendant had an open knife in his hand. According to his testimony the

defendant took approximately $58 from C. W. Fisher and then threw him in the back room of the station. A few minutes later C. W. Fisher called the police. C. W. Fisher identified James Edward Mason as the person who held the knife on him and took his money.

On September 10, 1952, about nine o'clock in the morning the defendant and another man came into a pawn broker's shop operated by Albert Schwartz in Birmingham, Alabama, and asked to be shown an overcoat. As Albert Schwartz was showing him the coat the defendant grabbed him by the throat and carried him to the back of the store. The defendant then went to the cash register while the other man held a knife on Albert Schwartz. About this time a lady walked into the shop. This distracted their attention and Albert Schwartz grabbed one of the men and screamed for help. At this outcry the defendant and his companion ran out of the building. Albert Schwartz identified James Edward Mason as one of the persons who attempted to rob his store, as has been set out.

On the night of September 15th Chesley Hazlett was employed as a shipping clerk for the Sunshine Biscuit Company and was locking the door of this establishment when the defendant stuck a pistol in his face and ordered him to unlock the door and go inside and unlock the safe. After they were inside Chesley Hazlett told him that he could not unlock the safe because he did not know the combination. The defendant thereupon threatened to kill Chesley Hazlett and took approximately $8 from his person. Chesley Hazlett identified James Edward Mason as the person who held the pistol on him and took his money.

The defendant testified in his own behalf. He stated that he did not rob Mr. Hazlett, that he did not rob the store of Mr. Schwartz and did not rob Mr. Fisher. He further testified that he was with Frank Draper and James Givhand at the time the Peoples Oil Company Station was robbed but denied having anything to do with the robbery. He further testified that the police officers forced him to sign the statement introduced in evidence.

The general rule in Alabama is that evidence of distinct and independent offenses is not admissible in the trial of a person accused of a crime. Brasher v. State, 249 Ala. 96, 30 So.2d 31; Harden v. State, 211 Ala. 656, 101 So. 442; Weatherspoon v. State, 36 Ala.App. 392, 56 So.2d 793; Baker v. State, 19 Ala.App. 437, 97 So. 901, certiorari denied 210 Ala. 320, 97 So. 903.

Under our system of law when a defendant is charged in an indictment, he must be tried on that indictment. The purpose of the indictment is to limit and make specific the charges that the defendant will have to face on the trial. It is evident that if upon the trial of a fixed and specific charge, evidence of other and separate and distinct offenses are allowed, the result is that the defendant is actually being tried for a series of crimes. Brasher v. State, supra. In Brasher v. State, supra, this court quoted with approval following [249 Ala. 96, 30 So.2d 35]:

"'* * * Here, however, he was in real truth brought to trial upon some half-dozen charges, while the indictment gave him information of but one offense. Logically, under the rule announced by the court at the trial, it could make no difference in the principle if the defendant had been acquitted or convicted of the other offenses. They could be still put in evidence to show a criminal propensity on his part, and he compelled to again defend against them. In a large degree the effect of such a proceeding is to "shut the gates of mercy on mankind," so that if but once an individual suffers a lapse of virtue, thenceforward the law will pursue him with the vindictive zeal of a Javert, using a single accusation to wreak upon him the cumulative vengeance of a general inquisition.' * * *"

This court in Harden v. State, supra, said [211 Ala. 656, 101 So. 444]:

"It is the law that distinct criminal acts, having no connection with the homicide, and shedding no light on defendant's connection therewith, are in-

admissible. Such testimony may tend to create an atmosphere upon the trial highly injurious to defendant. Care should always be taken not to convict a man of one alleged crime because he has been guilty of another."

There are exceptions to the general rule to which we have referred. These exceptions have been discussed at length in previous decisions of this court and require no further general discussion here. We refer to Brasher v. State, supra, McKenzie v. State, 250 Ala. 178, 33 So.2d 488; Johnson v. State, 242 Ala. 278, 5 So.2d 632; Daniels v. State, 243 Ala. 675, 11 So.2d 756; Lee v. State, 31 Ala.App. 91, 13 So.2d 583, certiorari denied 244 Ala. 401, 13 So.2d 590. All of the exceptions relate to the relevancy of the evidence, which means that evidence of separate and distinct crimes are admissible only when the evidence is relevant to the crime charged. Noble v. State, 253 Ala. 519, 45 So.2d 857.

The exceptions may be summarized as knowledge, intent, plan or design, motive, identity and inseparable crimes.

■ Where knowledge is an essential element of the crime charged, proof of other crime is admissible if they tend to show that the defendant in the case on trial had such knowledge. For example, if the crime charged was receiving stolen goods, evidence that the defendant had previously received stolen goods from the same thief is admissible. Little v. State, 24 Ala.App. 484, 136 So. 864; Stanley v. State, 88 Ala. 154, 7 So. 273. The evidence of other crimes in the case at bar can have no connection with knowledge. There was no attempt by proof of the other crimes to show that the defendant knew that Ernie Gilbert had money or that the defendant knew anything that would aid him in the alleged robbery for which he was on trial.

Is the evidence of the other crimes relevant to show the intent of the defendant in the case on trial? In the case of Noble v. State, supra, this court said [253 Ala. 519, 45 So.2d 859]:

"The rule by which that question [the admissibility of evidence of other crimes] must be determined has gone through a course of development which has modified the original broad statement and its application. As originally applied, it was broadly stated in sex cases that the evidence of other recent sex offenses or sex depravity is admissible to show intent to indulge in sex experience in the instant case or to identify the defendant as the person who committed the sex act under investigation. * * *

"But there has been a limitation put upon that broad statement. * * *

"So that we are now distinctly in the status of holding that there must be something in the two cases to show a relevant connection such as some peculiarity in them applicable to defendant not generally obtaining, or some relevancy to the pending issue other than to show the moral delinquency of defendant."

The case at bar is not a sex case. In order to be relevant on the theory of intent, evidence of the robberies against C. W. Fisher, Albert Schwartz and Chesley Hazlett, must have some connection with the crime charged. There was no such connection. In none of the three other crimes did the witnesses make any statement which would indicate that the defendant robbed Ernie Gilbert or that he had an intent to rob him.

In Baker v. State, 19 Ala.App. 437, 97 So. 901, 903, certiorari denied 210 Ala. 320, 97 So. 903, the Court of Appeals said:

"Where in a criminal case it becomes necessary to show a particular intent in order to establish the offense charged, evidence of subsequent acts of the same kind, constituting distinct offenses, and occurring more than a week after the offense for which the accused is on trial, and having no connection therewith, is inadmissible."

We think it clear, therefore, that the other crimes allowed in proof in the case at bar, are not admissible on the theory that they showed an intent to rob in the case at bar.

This brings us to the matter of plan or design. It is well in this connection to read the opinion in McKenzie v. State, 250 Ala. 178, 33 So.2d 488 and the dissenting opinion in that case of the present Chief Justice. Proof was allowed to show that on previous occasions defendant had used the same plan to lure women into some secluded place for the purpose of sexual relations. We certainly cannot say that the three other crimes admitted in evidence in the case at bar show that the defendant used a similar plan or design in the course of these offenses. For example, when the defendant entered the Sunshine Biscuit Company he used a pistol and his method of attempting a robbery was entirely different from the plan employed in the case at bar.

The testimony of Fisher, Schwartz and Hazlett could not be admitted to show motive in the commission of the crime in the case at bar since no motive or reason was shown by their testimony. Their testimony does not show in any way that the robbery of Ernie Gilbert took place as a result of the robberies of Fisher, Schwartz and Hazlett. We fail to find any statement by either Fisher, Schwartz or Hazlett that would tend to show any reason or motive for the alleged robbery of Gilbert.

On the matter of identity we quote from Judge McElroy's The Law of Evidence in Alabama, as follows:

"All evidence tending to prove a person's guilt of the offense charged may loosely be said to identify him as the guilty person. But identity, as here considered, assumes what may be called a 'mark' upon the guilty person; and proposes to show that defendant is the person having that mark, as evidenced by its being there in his commission of another similar offense. Wigmore, Sec. 410–412. Thus, when it is shown that the person who committed the offense committed it in a novel and peculiar manner, it may be shown that the defendant committed other offenses in the same novel and peculiar manner. * * * But evidence of accused's commission of other offenses which does nothing more than indicate the accused's inclination or propensity to commit the type of crime charged is not admissible as tending to show identity. Brasher v. State, 249 Ala. 96, 30 So.2d 31."

We do not think it can be seriously contended that the other three crimes introduced in evidence in the case at bar have anything in common with the crime alleged in the case at bar that would mark the crime charged as having been committed by the defendant.

■ Of course other crimes are admissible where they are admitted in evidence because they are part of the res gestae of the crime for which the defendant is on trial. Grant v. State, 250 Ala. 164, 33 So. 2d 466. We do not understand, however, that any contention is here made or can it be made that the other three crimes introduced in evidence were in any way a part of the res gestae of the crime for which the defendant was on trial in the case at bar.

As we see it the testimony in the present case shows four distinct and separate crimes which had no connection with each other except in point of time and except that according to the evidence the defendant committed each robbery. We believe from a full and complete consideration of the matter that the allowance in evidence of proof of the other crimes, to which we have referred, was highly prejudicial and harmful to the appellant. The result is that the defendant is entitled to have the judgment of the lower court reversed and the cause remanded.

Reversed and remanded.

All the Justices concur.