74 So.2d 528

**Anderson Woodrow McMURTREY**

v.

**STATE.**

**3 Div. 978.**

Court of Appeals of Alabama.

Aug. 31, 1954.

Wm. J. Fuller, Jr., Montgomery, and Ben H. Lightfoot, Luverne, for appellant.

Si Garrett, Atty. Gen., and Robt. P. Bradley, Asst. Atty. Gen., for the State.

HARWOOD, Judge.

This appellant has been adjudged guilty of manslaughter in the first degree under an indictment charging him with murder in the second degree of Harvey Ray Kennedy.

The evidence shows that the appellant had known the deceased in a rather casual way for about twenty-five years.

In addition to his regular job the appellant operated a fish bait business in Montgomery. About 6:30 A.M. on 19 September 1953 the deceased, who had been drinking, arrived at the fish bait place. He requested appellant to drive him to a nearby bootlegger's, which appellant did. There they had several drinks and departed with a half pint of liquor which they consumed at appellant's establishment.

This called for a renewed supply and appellant and deceased started in search of more liquor in appellant's pick-up truck. About 9:00 A.M. they arrived at the house of a negro woman named Tennessee Owens in Lowndes County. There they got out of the truck and sat on the porch of the house. According to appellant they obtained and drank more whiskey. According to Tennessee Owens, and Mose Hunter, a negro man who was present, no liquor was obtained or drunk at this place. In any event the deceased was drunk, and sat with his head drooped on his chest, slobbering down his shirt front.

After awhile appellant and deceased left, supposedly to return to Montgomery. Actually they proceeded only about a quarter of a mile from Tennessee's house where the truck was parked. Mose Hunter observed the pair sitting in the truck about 2:00 P.M. later in the day.

Shortly after this appellant returned to Tennessee's house alone in his truck. He made arrangements for Tennessee to cook him some food, and he and Mose Hunter started to a store to purchase some supplies.

According to Hunter, the appellant stated to him as they neared the place where the truck had been parked: "Mose, the old son of a bitch may be dead."

When they arrived at the place where the deceased was lying the appellant suggested they get out and see if he was dead. When this examination revealed that the deceased was apparently dead Hunter immediately returned on foot to Tennessee's house. The appellant returned in his truck, arriving at the same time as Hunter. There he announced to Tennessee that "that old son of a bitch is dead as a door nail, and I didn't do anything to him either."

Hunter suggested calling "the law," but appellant said he was in no condition to meet the law, got in his truck and left.

Appellant was taken into custody at his home in Montgomery about midnight that night.

Mr. W. L. Sowell, Assistant State Toxicologist, appeared as a witness for the State.

Mr. Sowell testified that he performed an autopsy on Kennedy's body on the night of 19 September 1953, being the day on which Kennedy died.

The portions of Mr. Sowell's testimony pertinent to this review are as follows:

"On the posterior side of the neck, that's the back neck, on the left side, just back of the left ear, there was a hemorrhagic area approximately two to two and a half inches long and one to one and a half inches wide, the left jaw or cheek was swollen approximately about an inch or an inch and a half thick. The bruised area on the jaw was approximately two and a half inches long and one and a half inches wide, that's the left jaw. Just back of the left ear and one half inch from the bottom of the ear, there was a three-quarter inch abrasion or tear in the skin. It was not a laceration or smooth cut, it was torn. The tissue underneath that was hemorrhagic, on the back of the shoulder were two small hemorrhagic acreas approximately six inches from the top of the shoulder, those areas were approximately one inch in diameter. On the forehead, in the center of the forehead there was a small abrasion approximately one half inch in diameter. That was about two inches above the horizontal line of the eye brow. The left eye was contused or hemorrhagic. The scalp was removed from the skullcap and three * * *".

\* \* \* \* \* \*

"And then the scalp was removed, by myself, from the skullcap. The underside of the scalp showed the presence of three hemorrhagic areas on top of the head, right along the top of the head there were three of them, approximately two inches long and an inch to an inch and a half wide, and they were right on the mid-line and right on top of the head. And then the skullcap was removed and the brain examined. The brain was congested, now when I say congested that means that there was loose blood in the tissue of the brain tissue itself, it's just the same as a bruise, there's just a little hemorrhage in there—and when you hear of congestion of the brain it means that there is some loose blood got into the tissue of the brain tissue. Then the abdominal and thoracic cavity, that's the chest and the stomach were opened and the organs therein examined. Each of the organs appeared to be normal with the exception of the heart. The heart was cynotic. Now, when you say cynotic that means that it is a light blue color, and that light blue color means absence of blood. And on sectioning the heart one of the coronary arteries was observed to be occluded. The condition of the heart from that occluded area on the coronary down to the apex or the bottom of the heart there was cynotic, that is it didn't have any blood in that portion of the muscle. Now let me go a little further, the coronary arteries are arteries that leave the large blood vessel that goes over the body just above the heart and they feed the heart itself because the heart has, the muscle of the heart has to be fed just the same as any other tissue over the body."

\* \* \* \* \* \*

"Q. Now, Mr. Sowell, I want to ask you in your experience as a toxicologist and your experience in making autopsies with reference to people who have had wounds of the nature of which this man had, in all of your experience, what in your opinion was the cause of death of Harvey Ray Kennedy? A. The terminal end or the thing that actually caused it at the last was coronary occlusion. Now let me go a little further here, when I say coronary occlusion that means that the coronary has occluded or closed up. There is a nerve that goes directly from the brain to the heart and it's known as the vagus nerve, and when that vagus nerve is stimulated the heart automatically stops. The brain was congested and the area of the brain from which the vagus nerve arrives was congested which showed an interference with the vagus nerve or stimulation of the vagus nerve to the heart. There are other nerves that control the blood vessels, they either will dilate them, open them up or either con-

strict them, and if any of the brain is damaged which controls the constriction of the blood vessel, then that area will send out an impulse to the vessels and will constrict them; and that's what there was in this case, a constricted coronary artery, it's just blocked, just the same as if you'd drive a peg in your well pipe, that's what it means—it just closes it up—

"Q. Now, would you, in your opinion as a toxicologist, with the experience that you've had with the human body, say that the wounds that this man had on his head, and on the side of his face, and the other wounds that he had, congestion, of the brain, was the cause of the death of Harvey Ray Kennedy? A. That's my opinion, yes, sir, that those injuries brought about the condition to the brain and the heart that caused his death.

"Q. What, in your opinion, Mr. Sowell, caused the injuries that this man received? A. A blunt instrument such as a fist, or something similar to a fist.

"Q. The wounds that you saw indicate that he had been struck with an instrument somewhat like a fist, or some other instrument of that nature? A. That's right, yes, sir."

The appellant testified as a witness in his own behalf. His testimony as to the occurrences at Tennessee Owens' house is not in material contradiction with that of the State's witnesses.

The appellant additionally testified however that on the trip to Lowndes County he and the deceased left the truck at one point and the deceased stumbled and fell into a rather deep ditch at the bottom of which were old cans and debris of various sorts.

The appellant further testified that after he drove the truck from Tennessee Owens' house the first time, and parked it, he and deceased fell asleep, or passed out. He was awakened by deceased fumbling with his private parts and attempting to perform a perverted sexual act with him. He thereupon struck deceased twice upon the head and pushed him from the truck. The deceased stumbled a few feet from the truck and lay or fell down. The appellant remained in the truck some few minutes and then drove to Tennessee's house where he sought to get her to prepare him some food.

It should be noted that State's witness Mose Hunter testified that when he and appellant returned to the point where deceased's body lay he saw two "drag marks," appearing as though made by heels, leading from where the truck had formerly been parked to the place where the body lay.

Counsel argues strenuously that the lower court erred in refusing appellant's motion for a new trial in that the evidence presented by the State has failed to establish to the required degree the appellant's agency in causing deceased's death, and in showing that deceased died from injuries inflicted by the appellant.

█ In view of Mr. Sowell's testimony, set out above, and appellant's admissions that he struck the deceased twice on the head, we cannot say the jury was not authorized in its verdict, nor are we prepared to say that the court was not warranted in denying the motion for a new trial.

As we stated in Alexander v. State, Ala. App., 71 So.2d 520, 524,[1] "Every killing is unlawful unless expressly excused, or justified by the law. A homicide being shown, it is incumbent upon the defendant to prove circumstances in mitigation, excuse, or justification, unless shown by the evidence produced by the State. The validity of the excuse, the degree of mitigation, or justification are questions for the jury. Champion v. State, 35 Ala.App. 7, 44 So.2d 616."

It appears that during the cross examination of the appellant he was asked if he had not during his examination by certain named police officers on the night of his

1. Ante, p. 533.

arrest stated to them that he "had had perverted sexual relations with other men on several different occasions."

Appellant's timely and well grounded objection to this question was overruled, and an exception was duly reserved. The appellant answered the question in the negative.

Thereafter in rebuttal to this testimony the State introduced two officers who were present at the questioning of the appellant who testified, over objection, that appellant had made such statement.

■ In our opinion the ruling of the court overruling the objection to the question necessitates a reversal of this case. The admission of the rebuttal testimony by the officers compounded the injury.

■ Ordinarily, evidence of prior offenses is not admissible. As with most broad general rules numerous exceptions have been developed. These exceptions are set out in Wharton's Criminal Evidence, Sec. 31, as follows:

"These exceptions fall under the following general divisions: (1) Relevancy as part of res gestae. (2) Relevancy to prove identity of person or of crime. (3) Relevancy to prove scienter, or guilty knowledge. (4) Relevancy to prove intent. (5) Relevancy to show motive. (6) Relevancy to prove system. (7) Relevancy to prove malice. (8) Relevancy to rebut special defenses. (9) Relevancy in various particular crimes. It is recognized that in many instances the line of demarcation is not clear, but the discretion vested in the trial judge, intelligently and considerately exercised, will enable the prosecution fully to present the charge, on the one hand, and, on the other hand, to protect the accused and secure to him the rights guaranteed to him by the Constitution and the laws."

Several of these exceptions have been dealt with in the opinions of this court and of the Supreme Court. We will not attempt a review of these decisions, but refer any interested party to the following citations: Wilkins v. State, 29 Ala.App. 349, 197 So. 75, certiorari denied 240 Ala. 52, 197 So. 81; Lee v. State, 31 Ala.App. 91, 13 So.2d 583, certiorari denied 244 Ala. 401, 13 So. 2d 590; Brown v. State, 32 Ala.App. 131, 22 So.2d 445; Lee v. State, 246 Ala. 69, 18 So.2d 706; Daniels v. State, 243 Ala. 675, 11 So.2d 756; Robinson v. State, 243 Ala. 684, 11 So.2d 732; Johnson v. State, 242 Ala. 278, 5 So.2d 632; Jackson v. State, 229 Ala. 48, 155 So. 581; Brasher v. State, 249 Ala. 96, 30 So.2d 31.

We are clear to the conclusion that the only possible exception that might be argued could be applied in this case is the one permitting evidence of other offenses where such evidence is relevant to rebut a special defense interposed by the accused. This because the appellant claimed that the deceased attempted an act of perversion at the time he struck him.

The cases dealing with such exception are where the accused claims the homicide resulted from accident or mistake, and without any criminal intent. Poisoning cases are typical. It is readily apparent that where an accused claims that poison was administered accidentally, or through mistake, evidence of other poisonings by the accused is highly relevant in combating such a defense, and in showing the absence of accident or mistake, and establishing his criminal intent in the matter. Actually therefore such evidence is admissible under the exception permitting evidence of other offenses when relevant to establish intent.

In the present case the appellant was not charged with any sex offense, but with murder. That he may at some unspecified time have had perverted sexual relations with other unnamed men is, in our opinion, irrelevant in any rational tendency to prove an intent to kill at the time this offense was committed. Being irrelevant to this issue, the evidence should not have been admitted for its prejudicial effect cannot be questioned.

Reversed and Remanded.