108 So.2d 188

**Ural ROBINSON, alias,**

v.

**STATE.**

**3 Div. 30.**

Court of Appeals of Alabama.

Jan. 6, 1959.

D. W. Crosland, Montgomery, for appellant.

John Patterson, Atty. Gen., and Geo. D. Mentz, Asst. Atty. Gen., for the State.

PRICE, Judge.

Appellant was convicted of a violation of subsection (a) of Section 174, Title 14, Code 1940, as amended, which reads: "No person who has been convicted in this state or elsewhere of committing or attempting to commit a crime of violence shall own a pistol or have one in his possession or under his control."

The charge of two prior convictions of manslaughter was admitted. It was also stipulated that the service station in which the pistol was found was leased and operated by the appellant.

 The evidence for the State tended to show that members of the sheriff's department of Montgomery County searched defendant's premises on April 25, 1957, at 9:00 A.M., having first obtained a search warrant for illegal whiskey. A .38 caliber pistol, loaded with six .38 cartridges, was found in a drawer in a cardboard display cabinet where windshield wiper parts were kept. The cabinet was directly to the right of a desk on which the cash register was placed and behind which Hattie Mae Mathews was sitting, working on books or papers. Defendant said the pistol belonged to Hattie Mae, but admitted he knew it

was there. Hattie Mae asked the officers "Can't a person keep a pistol for her own protection?" and commented about carrying the pistol.

Berry Jackson, testified he worked for defendant from June to Christmas, 1956, and worked as bookkeeper at defendant's service station from January, 1957 to March, 1957; that when he first started working at the service station defendant showed him the pistol and told him it was his, and that defendant took the pistol back and forth; that on the day in January when he showed him the pistol defendant discharged a woman bookkeeper named Mamie; that defendant told him he was going to do bodily harm to Mamie because she had taken $100.00 from him, and that is when defendant showed him the pistol; that defendant had another woman employee named Ora Lee who was working at the front of the station; that he was not acquainted with Hattie Mae Mathews and she was not working at the station when he was there. The witness testified he had been indicted on four separate charges for forging defendant's name to checks; that he had agreed to plead guilty to two of said charges and the other two were nol prossed; that he was in the county jail awaiting sentence.

For the defendant, Hattie Mae Mathews testified she was defendant's bookkeeper, and had been so employed since he leased the service station, and was in charge of the cash register; that Berry Jackson had worked for defendant for not more than two weeks; that no woman other than witness had worked at the station; that she worked different shifts, some days from 7:00 A.M. until 5:00 P.M., and other days she worked from 5:00 P.M. until midnight; that on the days she closed the station at midnight she took the money home with her; that the pistol belonged to her mother. In November she began carrying the pistol back and forth from her home to the station; that she didn't tell defendant she had the pistol but she did tell Benny Fraser, a helper at the station, about the pistol.

About a month before the officers came defendant found the pistol and she told him it was hers and asked why she couldn't have protection, but he didn't answer this question. Defendant never handled, owned, or had possession or control over the pistol.

Benny Fraser testified he had worked for defendant for two years; that he told Hattie Mae she should have protection and she showed him the pistol and he knew she was carrying it, but he told her defendant couldn't be around a pistol. He never saw defendant handle the pistol and never heard him mention it until two or three weeks before his arrest when he found out Hattie Mae was carrying it.

Nevada Gray testified Hattie Mae was her daughter; that the pistol belonged to witness' brother who left home in 1920; that she gave Hattie Mae permission to use the pistol.

Defendant testified he leased the service station from the Shell Oil Company on September 6, 1957; that Hattie Mae Mathews works for him as cashier and bookkeeper and when she was alone at the station and closed it at midnight she would take the money that was in the cash register home with her; that his station had been burglarized in January; that he first discovered the pistol when he looked in the drawer of the display cabinet for a windshield wiper blade; that when he asked her about it Hattie Mae said it was hers and he told her "You know I am not supposed to have a pistol around me" and that she was not supposed to have it there; that he never thought about the pistol again and the next time he saw it was when the officers pulled it out of the drawer; that Berry Jackson had worked for him from the last of January to the 5th day of March and had been fired for forging his name to four checks.

Conviction of a crime of violence having been admitted, proof that defendant subsequently owned a pistol or had one in pos-

session or under his control will justify a conviction of the offense charged.

"In order to establish the unlawful possession of a weapon, actual physical hold thereof is not necessary; constructive possession may be sufficient." 94 C.J.S. Weapons § 8, p. 492.

The evidence presented questions for the jury's determination as to the ownership, possession or control of the pistol, and was sufficient to support the judgment of conviction. The general affirmative charge in defendant's behalf was refused without error. The motion for a new trial on the grounds of the insufficiency of the evidence was properly denied.

During the cross examination of defendant the record shows the following:

"Q. Do you remember the time, Ural, when you were tried and acquitted up here for possession of a pistol sometime ago? A. Yes, sir.

"Q. Who claimed to own that pistol?

"Mr. Crosland: We object to that, if the Court please. He was acquitted by a jury and—

"Mr. Stewart: He is very good at getting other folks to claim pistols—

"The Court: I overrule the objection.

"Mr. Crosland: We except, if the Court please.

"Q. Ural, who claimed to own this pistol when you were tried for possession of this pistol? A. If that's the gun, that gun belonged to a first cousin of mine.

"Q. It belonged to a first cousin of yours? A. Yes, sir. If that's the one.

"Q. Who said they brought it to your house? A. My first cousin and wife.

"Q. And your wife? A. Yes, sir.

"Mr. Crosland: Your Honor, I have no objections to trying that case over and we can go and get the record and read it word for word, and read where a Not Guilty verdict was returned by the jury.

"Mr. Stewart: We admit that he was tried and acquitted. I just want to show—."

■ Generally, in prosecutions for a particular crime, evidence showing or tending to show commission of another crime of the same sort, wholly independent of and unconnected with that charged, is inadmissible.

There are exceptions to this general rule, such as when the object is to show "knowledge, intent, plan or design, motive, identity and inseparable crimes." Mason v. State, 259 Ala. 438, 66 So.2d 557, 559, 42 A.L.R.2d 847, and cases cited; McMurtrey v. State, 37 Ala.App. 656, 74 So.2d 528.

■ The above quoted excerpt from the record shows that the sole ground of objection assigned to the question was that defendant had been tried and acquitted of the former offense. " * * * the assigning of a specific ground of objection to evidence is a waiver of all other grounds, and, if the objection assigned is not apt, the court will not be put in error for overruling it, although the evidence may be subject to other objections. McDaniel v. State, 97 Ala. 14, 12 So. 241." Harwell v. State, 12 Ala.App. 265, 68 So. 500, 503.

■ We have not found an Alabama case decisive of the question presented, but we are clearly of opinion the general rule is that the fact that a defendant in a criminal prosecution has been acquitted of another offense does not render evidence of such prior offense inadmissible, if such evidence is otherwise competent.

Pilcher v. United States, 5 Cir., 113 F. 248, 51 C.C.A. 205; People v. Lachuk, 5 Cal.App.2d 729, 43 P.2d 579; People v. Follette, 74 Cal.App. 178, 240 P. 502; Taylor v. State, 174 Ga. 52, 162 S.E. 504; Koenigstein v. State, 101 Neb. 229, 162 N.W. 879; Foreman v. State, 127 Neb. 824,

257 N.W. 237; People v. Johnston, 328 Mich. 213, 43 N.W.2d 334, 20 A.L.R.2d 1001.

■ As pointed out above, counsel's objection was on the sole ground of defendant's acquittal of the former offense. By his last statement he waived that ground.

■ Charges refused to defendant were not predicated on a belief from the evidence, or were otherwise faulty.

We find no reversible error in the record and the judgment is affirmed.

Affirmed.