278 So.2d 218

**W. J. HINKLE, alias**

**v.**

**STATE.**

**5 Div. 93.**

Court of Criminal Appeals of Alabama.

April 17, 1973.

Rehearing Denied May 15, 1973.

Smith, Bowman, Thagard, Crook & Culpepper, Montgomery, for appellant.

William J. Baxley, Atty. Gen., Montgomery, and Charles A. Thigpen, Sp. Asst. Atty. Gen., Tuscaloosa, for the State.

TYSON, Judge.

The appellant was indicted on September 21, 1971, by the Grand Jury of Lee County, Alabama, for buying, receiving, concealing, or aiding in the concealing of one "1971 Dodge truck-tractor of the value of $21,000.00, the personal property of Dodge Truck, Inc., a Corporation, knowing that it was stolen and not having the intent to restore it to the owner." The jury found the appellant guilty, and judgment fixed punishment at ten years imprisonment in the penitentiary.

The evidence taken in the case revealed that the vehicle in question was a new 1971 white Dodge truck-tractor with a roof mounted air conditioned unit, and it was absent a fifth wheel. The truck was the property of the Dodge Truck plant in Atlanta, Georgia. The truck was first noticed missing on April 7, 1971, by the operational manager of the plant, Mr. Douglas Fred Wyatt. Mr. Wyatt testified that he did not see the truck again until it was recovered in Alabama, and was located at the Opelika State Patrol Office. He further testified that the truck was unchanged

with two exceptions; first, there was additional mileage on the truck, and, second, the ignition switch had been bypassed, and a different switch installed.

Mr. Stanley Melton testified that he was the traffic manager of Diversified Products Trucking Corporation, the corporation for which appellant worked, and that the corporation leased most of its tractors, and had leased a few from appellant. Melton recalled seeing the white tractor in question, and remembered having seen it on the lot for a period of two to three weeks. Melton further testified to the fact that Ronnie Watkins of the Sheriff's Department came out to the lot to speak to appellant about stolen trucks. The next day appellant left Diversified's lot and never returned.

Mr. Leroy Walls, a mechanic for Bill Heard Leasing, testified that he knew appellant, and on April 10, 1971, he saw appellant bring the truck in question on the lot. Appellant further had a conversation with Walls, telling him he wanted to get the truck painted. He stated it was never painted.

Officer Watkins testified he had spoken to appellant regarding the truck, and appellant told Watkins that he had sent the 1971 Dodge truck to McLendon Motor Company in Lafayette to have it checked out and to see about putting a fifth wheel on it. Watkins via radio called the motor company, and they said they had never heard of the truck. Appellant, when confronted with this, said it should be there, with no further explanation. Appellant then stated that one Charles Samuel Stewart, who was in the trucking business and from whom appellant had purchased one truck, brought the truck down for appellant to look at it. Appellant told Stewart he didn't want the truck, but Stewart insisted that appellant try it out. Appellant drove it around, and then got out and back in and tried to start it, and the ignition switch "came loose and fell in his hand." He then replaced the cylinder. At this point the truck was

parked on the lot for a period of two to three weeks. Appellant then received a call from an individual in Florida, i. e., Mr. Stewart, which later showed him to have been jailed in Florida, and thereupon appellant immediately moved the truck to a service station, about 11:00 at night, and left it there. The next day he took it to his farm at Lafayette. The next Monday, appellant brought the truck back to Diversified's lot and parked it. Appellant denied having any knowledge that the truck was stolen. That same Monday, the truck was found unchanged "with the above exceptions" on the Diversified lot in question.

I

Appellant initially contends that the trial judge made gestures, and examined witnesses, and made comments in the presence of the jury, revealing to the jury that he was not impartial, and thereby influenced the jury's decision. Our attention is directed to the following on Record pages 87-88:

"Q Well, since you stopped your relations with them, have they paid you?

"A They have paid—

"MR. WRIGHT: Now we object to this Your Honor, I see no—

"THE COURT: Sustained.

"A They—

"MR. MAYE: I realized the Court sustained my objection, but I had rather the Court wouldn't make gestures when he does that.

"THE COURT: What did I do?

"MR. MAYE: Just held up your hands like that, like this.

"THE COURT: Well, it was entirely unconscious that I held up my hands Mr. Maye. I do most respectfully sustain the objection.

"MR. MAYE: Yes, sir. All right sir, thank you sir."

The Supreme Court, in the case of Phillips v. Beene, 16 Ala. 720, held:

"* * * it cannot be seriously contended that every expression of opinion by the court during the progress of the trial, if erroneous, shall furnish ground for reversal. Such opinion must in some way influence the result of the cause, or be supposed to do so by being given in charge to the jury, or by a refusal to charge, or by being connected with the exclusion or admission of the evidence."

■ As noted in the colloquy, above quoted, the movement of the trial judge's hand was an unconscious reaction, and in nowise was intended to reflect upon the appellant or his counsel. It is clear that such does not constitute grounds for reversal of this cause. Parker v. City of Birmingham, 36 Ala.App. 234, 56 So.2d 348; Nichols v. State, 267 Ala. 217, 100 So.2d 750.

## II

■ Appellant next questions the action of the trial court in directing certain questions to the appellant while on the stand during the district attorney's cross-examination.

"Q But you did buy a truck, I believe you said it was a 1971 Peterbuilt?

"A Right.

"Q Truck?

"A Yes, sir.

"Q And did you later lease that truck and that trailer to Diversified?

"A Yes, sir.

"Q On April the 1st?

"A I don't know.

"Q It was shortly before?

"A Mr. Chapman and them had got all my records, I don't know. In other words, I'm getting back to the deal where Mr. Melton said that I cleaned my desk out.

"Q I'm not asking you about that, I'll get to that in a minute, I'm asking you right now about this Peterbuilt truck you say you bought from Charles Samuel Stewart.

"A All right.

"Q Where is that truck and trailer now?

"A It's been given back to the owners.

"Q Actually it wasn't given back to the owners, it was—

"MR. MAYE: Now we object to that if the Court please.

"THE COURT: Overruled.

"MR. MAYE: We reserve an exception.

"THE COURT: Overruled. He's testified—he's already testified that he bought another truck from Mr. Stewart on Direct Examination.

"MR. MAYE: I understand that.

"THE COURT: All right. The state is entitled to Cross Examine him on the same thing.

"Q As a matter of fact, that particular truck was recovered by Florida Highway State Motor Vehicle Department at Fort Myers, Florida, wasn't it?

"MR. MAYE: We object to that.

"A No, sir.

"THE COURT: Overruled.

"MR. MAYE: We reserve an exception.

"Q It was recovered by the Florida authorities, wasn't it?

"A Yes, sir.

"Q And then returned by them to the owners?

"A I think so.

"Q And it was in fact stolen?

"MR. MAYE: We object to that, unless it is shown that he knew that it was stolen.

"THE COURT: Well, did you know it was stolen or not?

"A No, sir.

"THE COURT: The other truck?

"A I had a bill of sale—

"THE COURT: I'm not asking you that, did you know?

"A No, sir.

"THE COURT: Whether that truck was stolen?

"A No, sir.

"Q You knew it was stolen after your driver called you from Florida though and told you that they had him in jail?

"MR. MAYE: We object to that.

"THE COURT: Overruled.

"MR. MAYE: We reserve an exception.

"THE COURT: Mr. Maye, as the Court sees it here, he testified that he bought one truck from Charles Samuel Stewart and that's been recovered, and then he claims that he bought this truck.

"A No, sir, I don't claim I bought this truck.

"THE COURT: Yes, sir, from the same man.

"MR. MAYE: Yes, sir. And he is—but this truck is not whether it was stolen or whether it was not, has nothing to do with this case.

"THE COURT: Which truck?

"MR. MAYE: The Peterbuilt truck.

"MR. WRIGHT: Your Honor, they brought it up.

"THE COURT: You brought it up Mr. Maye.

"MR. MAYE: Reason we brought it up was to show a transaction with a man that he knew and to show knowledge of his knowing this man.

"THE COURT: Well, it turned out as the same man.

"MR. MAYE: Yes, sir.

"THE COURT: That he bought this one from, that he bought this one from.

"MR. MAYE: That's right."

In Brandes v. State, 17 Ala.App. 390, 85 So. 824, we find the following:

" . . . The unquestioned province of the court—in fact, the solemn and sacred duty of a trial judge—is the development and establishment of the truth, and in this connection it is always permissible for the court, and if it appears necessary for him to do so it is his duty, to propound to witnesses such questions as it is deemed necessary to elicit any relevant and material evidence, without regard to its effect, whether beneficial to the one party or the other. Beal v. State, 138 Ala. 94, 35 So. 58. In fact, it is a sacred duty of a judge, both in civil and criminal cases, to give strict attention to the evidence, and to all facts and incidents attendant upon the trial, to propound questions to witnesses if in his judgment he deems it necessary, and to supervise and control the proceedings before him, with a view that justice may not miscarry. As before stated, there is nothing in the record before us even tending to show that the trial judge transcended his authority or abused the discretion with which, under the law, he is vested."

It is our opinion that the trial court properly exercised its prerogative in the ascertainment of certain aspects of the testimony, as set forth above, and that such did not invade the rights of the accused. Lovejoy v. State, 33 Ala.App. 414, 34 So.2d 692.

■ Appellant's counsel also calls our attention to the following statement directed to the appellant on Record page 94:

"Q It was sitting up there that morning when you were talking to Deputy Watkins out there at Diversified's parking lot?

"A I didn't know whether it was or not.

"THE COURT: Well, why didn't you know?

"A Because Claude Brown was supposed to have took it from there up to Glenn McClendon's and that's the reason I didn't know where it was at."

As stated by this Court in Weeks v. State, Ala.Cr.App., 274 So.2d 646 per Harris, J.:

" . . . [W]e are forbidden to further treat this contention of error for the reason that there was no objection or exception reserved to the action of the court. Woodard v. State, 253 Ala. 259, 44 So.2d 241; Neal v. State, 36 Ala.App. 156, 54 So.2d 613; Hamilton v. State, 270 Ala. 184, 116 So.2d 906." See also Gilbreth v. State, 23 Ala.App. 162, 122 So. 309.

### III

Appellant next submits that the trial court in its oral charge to the jury made several comments upon the evidence, and thereby erred according to Title 7, Section 270, Code of Alabama 1940:

From the Record:

"Now, if you should be convinced beyond a reasonable doubt that this Defendant bought, received, concealed or aided in concealing this truck knowing that it had been stolen or having reasonable grounds for believing that it had been stolen, and did not have the intent to restore it to the owner, then, of course, after considering all of the evidence, you are convinced beyond a reasonable doubt that that was true, then it would be your duty, of course, to find him guilty. And

the fact that he went—had brought the truck back out there would not be any defense. An accused cannot exculpate himself from the offense of buying, receiving, or concealing a stolen property by making restoration. It's too late to make restoration if all elements existed at the time the property was bought, received, concealed. In other words, restoration is not defense, restoration of the property."

■ It is clear from reading the above that the trial court was correctly pointing out the law in Alabama, that an accused cannot exempt himself from punishment on a charge of buying, receiving, concealing, or aiding in concealing stolen property by simply restoring it to the owner. Johnson v. State, 41 Ala.App. 351, 132 So.2d 485; Hoggle v. State, 36 Ala.App. 703, 63 So.2d 289, and such, therefore, was not a "comment on the evidence."

Further, from the Record, the following:

"Now, there is some evidence in this case, the State claims, showing the possession of this truck in the Defendant's actual physical possession, and the State claims that the Defendant did have possession of this truck in his actual physical possession. Now, the Court charges you or instructs you—well, let the Court say this, the Defendant here got on the stand and he offered an explanation as to his possession. Whether or not that explanation of the Defendant as to his possession is sufficient is a question for this jury.

"Now, there was some evidence in here or the State claims there was some evidence about some admissions that he made, some statements that he made, not necessary confessions, but some statements that he made about where the truck was and so forth. Now, the jury may consider all of the facts and circumstances surrounding the taking of the statement of the Defendant by the Deputy Sheriff, Ronnie Watkins, in determining the weight or credibility that you will give to that statement."

The Supreme Court in Crain v. State, 166 Ala. 1, 52 So. 31, stated:

"The court in its general charge to the jury, in submitting the issues, stated the tendencies of the evidence for the state and defendant without an invasion of the province of the jury. In the admission of evidence the court necessarily passes upon its tendency as proof as matter of law."

Further, the former Court of Appeals, through Justice Harwood, then Presiding Judge of the Court of Appeals, in Coshatt v. State, 37 Ala.App. 422, 69 So.2d 877, stated:

"However, it has been held that this section ' "was not intended to abridge the original, inherent power of the court to direct the attention of the jury to undisputed, admitted facts" ', and ' "when the record shows affirmatively that certain facts are clearly shown and not disputed —not made any part of the contention— then it is not error if they be assumed in the charge to be facts, and stated as such without hypothesis." ' Vinson v. State, 29 Ala.App. 234, 194 So. 705, 708, and cases therein cited."

There is no error in the instances above set forth, as the trial court properly stated the tendencies of the evidence for the State and for the appellant.

### IV

■ Appellant also questions the following portion of the trial court's oral charge, dealing with the effect of evidence of the appellant's good character:

"Evidence of good character is never a defense to a criminal act or the commission of a crime, but there has been considerable evidence in this case of good character. You should not disregard that evidence, you should consider that evidence along with all of the other evidence in the case. It might generate in your mind a reasonable doubt of the guilt of this Defendant."

The purpose and probative effect of proof of good character of the appellant was properly defined in the trial court's oral charge. Armor v. State, 63 Ala. 173; Scott v. State, 211 Ala. 270, 100 So. 211.

### V

■ Following the return of the guilty verdict by the trial jury, the appellant made his request for probation. This was denied by the trial court. We have examined the Record where this occurred (R. p. 122), and hold that the trial court properly exercised its discretion in so ruling. Moreover, the order denying probation is not reviewable upon the appeal from the judgment of conviction. Parnell v. State, 35 Ala.App. 532, 49 So.2d 919; Hughes v. State, 45 Ala.App. 250, 228 So. 2d 862, and authorities therein cited.

### VI

Finally, the appellant calls our attention to the cross-examination of the appellant pertaining to his alleged purchase of another vehicle from Mr. Stewart. This Court, through Price, J., in Robinson v. State, 40 Ala.App. 101, 108 So.2d 188, stated:

"Generally, in prosecutions for a particular crime, evidence showing or tending to show commission of another crime of the same sort, wholly independent of and unconnected with that charged, is inadmissible.

"There are exceptions to this general rule, such as when the object is to show 'knowledge, intent, plan or design, motive, identity and inseparable crimes.' Mason v. State, 259 Ala. 438, 66 So.2d 557, 559, 42 A.L.R.2d 847, and cases cited; McMurtrey v. State, 37 Ala.App. 656, 74 So.2d 528."

More recently, in Harris v. State, 41 Ala.App. 261, 130 So.2d 227, Justice Harwood, then Presiding Judge of the Court of Appeals, stated:

". . . [W]e are clear to the conclusion that the doctrines of our cases dealing with receiving stolen goods prohibit

evidence of other like offenses unless a defendant obtains the stolen goods from the same thief . . . ." See also Sledge v. State, 40 Ala.App. 671, 122 So.2d 165.

 Under the above authorities, we are clear to the conclusion that the appellant himself, having first injected this matter into evidence, the State was properly allowed to develop this in its cross-examination.

We have carefully considered this entire Record under Title 15, Section 389, Code of Alabama 1940, and each matter raised by the able attorneys, representing both the appellant and the State of Alabama in this cause, and finding no error therein, the judgment of conviction is due to be and the same is hereby

Affirmed.

CATES, P. J., and ALMON and De-CARLO, JJ., concur.

HARRIS, J., recuses self.