George Lee Dowdell, alias James Otis, Sr., was charged by indictment with knowingly exerting unauthorized control over or obtaining, by deception, property, to-wit: "FOOD STAMPS" from the Department of Pensions and Security of the State of Alabama or one of its agents or employees, to-wit: Ms. Dorothy M. Thomas, in the amount of $602.00 by using an assumed name with intent to deprive the owner of the property, contrary to §13A-8-4, Code of Alabama, 1975.
The jury found the appellant guilty of theft of property in the second degree and following a sentencing hearing the trial court found the appellant guilty of second degree theft and sentenced the appellant to 15 years' imprisonment after a prior burglary conviction was placed in evidence at the sentencing hearing.
On September 9, 1983, Ms. Dorothy Thomas, a worker in the Talladega Food Stamp office received an application from a black male who identified himself as James Otis, Sr. Ms. Thomas made a positive in-court identification of the appellant as the party who filled out the application for food stamps. She stated that she had been over with "the appellant and explained to him about his rights and responsibilities in signing the application." She stated that the appellant later returned and gave her a reference where she could verify his residence. She stated that this was required upon receiving applications. She stated that she informed her supervisor that she had some doubt about the application but that since the appellant had obtained the necessary verification the certification for food stamps was approved.
Clyde Yates, an issuance supervisor at the Talladega Food Stamp Office of the Department of Pensions and Security, brought out records which showed that in September and October, 1983, the appellant, using the name of "James Otis, Sr." had received, on two different occasions, $253.00 for food stamps on September 20, 1983, and $349.00 for food stamps on October 10, 1983.
The State next presented the testimony of one Shirley Howell, a certification worker in the St. Clair Food Stamp Office of the Department of Pensions and Security. Ms. Howell interviewed a party who identified *Page 47 
himself as one James Davis, Sr. on April 14, 1983. She stated that she recalled how he was dressed and his manner of speech and then she made a positive in-court identification of the appellant. She stated that Davis told her he was a migrant worker and was being seasonally employed in the area. He told her that he had a wife and three children and no money. Mrs. Howell then explained his responsibilities and the penalties in the warnings and noted this on the application.
Ms. Millicent Bivins, a certification worker in the St. Clair County Food Stamp Office, testified that an application for food stamps was made by James Davis on May 4, 1983. She stated that this original application was denied because "Davis" did not come in for an interview. However, "Davis" did come in and was certified because he had a wife and three children and one niece living with him and he produced the documents which she asked for.
Ms. Alethia James testified that she interviewed a party who identified himself as George Roland, Sr. on June 13, 1983 in the Food Stamp Office of the Department of Pensions and Security at Bessemer, Alabama. Ms. James stated that the party, whom she positively identified in court as the appellant, listed six people, a wife and four children, on his application and made application for the food stamps. She, too, went over this application with him and explained his rights and responsibilities with him in signing such application.
Ms. Leola Ezelle, a worker in the Bessemer Food Stamp Office, testified that she interviewed a "Charles Robertson" for food stamps on September 22, 1983. She, too, identified the appellant positively in court as being "Robertson" and he made application for food stamps and listed six people on the application. She stated that she had a vivid memory of the appellant as being the party who made this application.
Antone Peoples, a worker in the Food Stamp Office of the Department of Pensions and Security in Anniston, Alabama, testified that on July 20, 1983, a "Charles Robertson" applied for food stamps. She testified further that on October 14, 1983, a "George Owens" applied for food stamps and that she personally interviewed "Owens". She stated she recognized the appellant and positively identified him in court. She stated that the "Robertson" application listed six family members and that the "Owens" application also listed six family members. The Owens application was approved. She stated that she later checked the files and found the application, back in July, under the name of "Robertson" and then she notified the proper party in the department to make an investigation.
Linda Gunnoe, a worker in the Calhoun County Food Stamp Office of the Department of Pensions and Security, testified she interviewed the appellant who identified himself as "George Dowdell" on September 1, 1983. On this application, appellant listed six family members and stated to her that he was a migrant worker.
Charles Winfrey, an investigator with the Calhoun County District Attorney's Office, stated that he had been working on cases involving an alleged food stamp ring in Calhoun County in October, 1983. Winfrey stated that on October 27, 1983, he saw two black males applying for food stamps in the office of the Department of Pensions and Security in Anniston, Alabama. Winfrey identified the appellant as one of these. He stated that he saw the appellant fill out the form and then get three books of food stamps. He stated that he approached the appellant as he was leaving and asked him whether he was "George Owen or George Dowdell". The appellant stated that his name was "Dowdell". Winfrey then searched the appellant and found three books of food stamps on him with the identification and the name "Owen" on same. There was no identification with the name "Dowdell" on this. At this point, the appellant was arrested.
Following the completion of the State's evidence, the appellant made a motion to exclude which was denied by the trial court.
The appellant, George Lee Dowdell, then testified that he had not been in Talladega *Page 48 
on September 9, 1983. He further denied ever going to the food stamp office in Talladega, in St. Clair County or at Bessemer, Alabama. He did admit going to the food stamp office in Calhoun County, Alabama and stated that he had plead guilty to food stamp theft in Anniston and admitted that he had made claims stating that he was a migrant worker.
On cross examination appellant admitted that he had a 1960 conviction for burglary in which he received a three year sentence. On cross examination he stated that Ms. Thomas and each of the other State witnesses were not telling the truth about him. He did admit, however, that he had obtained fake identification cards in the State of Florida.
 I
The appellant raises three issues in his appeal from his conviction in Talladega County, Alabama. The appellant states that the "general rule in Alabama is that evidence of distinct and independent offenses is not admissible in the trial of a person accused of a specific crime", citing Mason v. State,259 Ala. 438, 66 So.2d 557, 42 A.L.R.2d 847 (1953) and Killough v.State, 438 So.2d 333 (Ala. 1983).
This general rule, however, is subject to several exceptions. In C. Gamble, McElroy's Alabama Evidence, § 69.01 (6) (3rd ed. 1977), the test reads as follows:
 "Evidence of the accused's commission of another crime is admissible if such evidence, considered with other evidence in the case, warrants a finding that both the now-charged crime and such other crime were committed in keeping with or pursuant to a single plan, design, scheme or system. This rule is applicable whether such plan, design, scheme or system is narrow and specific in scope or is measurably broad and general in scope."
(Footnote omitted).
The exception mentioned above has been applied in at least two instances where, as here, the purpose of such evidence is to show more than a mere propensity by the accused to commit the crime but, instead, to show his purpose or plan and scheme for carrying out the offense charged. In McDonald v. State,329 So.2d 583 (Ala.Crim.App. 1975), cert. quashed 295 Ala. 410,329 So.2d 596 (1976) this court upheld, under the exception herein discussed, the allowance into evidence of other transactions or inticements to four other females to come into court with reference to their cases which were then pending before the court.
Similarly, in the trial of a former State official, Allen v.State, 380 So.2d 313 (Ala.Crim.App. 1979), cert. denied,380 So.2d 341 (Ala. 1980), this court also recognized the plan, scheme or design exception with reference to the introduction into evidence of certain loan applications and promissory notes executed by the appellant which were in exchange for placing certain State deposits in banks. This was in conjunction with certain data submitted to the lending institutions with reference to an alleged theme park which was to be developed in northwest Alabama. This court approved the use of such evidence in both of the cases hereinabove noted.
Likewise, such evidence may also be admitted where, as here, the appellant placed his identity at issue by denying that he had ever been in the surrounding counties and made application for food stamps. A discussion of the identity exception may be found in both Bobo v. State, 56 Ala. App. 622, 324 So.2d 336
(1975) and McMurphy v. State, 455 So.2d 924 (Ala.Crim.App. 1984).
We are of the opinion under both of the exceptions herein noted that the evidence at issue was properly admitted into evidence at appellant's trial.
 II
The appellant next argues that his trial counsel was inadequate and ineffective as a matter of law because he did not adequately prepare a defense against the use of the instances referred to in issue one of other applications made by appellant for food stamps in surrounding counties. Different counsel represents the appellant on appeal *Page 49 
of this cause and points out on Record page 34 an objection made by trial counsel to the use of these other instances of the appellant in applying for food stamps by stating that he "did not have time to prepare an adequate defense to such charges." Counsel candidly points out that trial counsel did not move for a continuance in either instance.
We do not construe this record, however, as admission that trial counsel was unprepared to defend this appellant at trial. To the contrary, he had filed several pretrial motions, had had discussions with the appellant over a period of time with reference to this defense and presented such evidence as was desired at trial. Equally important, trial counsel conducted a vigorous cross-examination of each of the State's witnesses particularly inquiring as to their recollection of the party who signed the alleged application, how they recalled this specific party, the number of persons interviewed on the date or dates in question, the number of persons seen within a given week or month by the State's witnesses. We have carefully examined this record in light of this contention and find that, contrary to appellate counsel's assertion, trial counsel did present an adequate and thorough defense and attempted to discredit each of the State's witnesses through cross examination.
This record does not sustain, in any sense, the appellant's claim of ineffective assistance of trial counsel. To the contrary, the record establishes that his counsel was conscientious and dutiful and rendered capable and effective legal service to this appellant. In light of our determination, we find that appellant was not denied the effective assistance of counsel in a constitutional sense, nor was he prejudiced in the manner in which the defense was conducted in this case. SeeStrickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052,80 L.Ed.2d 674 (1984); Daniel v. State, 459 So.2d 948 (Ala. 1984);Duncan v. State, 461 So.2d 906 (Ala.Crim.App. 1984); Browningv. State, 465 So.2d 1208 (Ala.Crim.App. 1984).
 III
Finally, appellant's counsel asserts that the State was improperly allowed to present into evidence a prior burglary conviction obtained in 1960 and placed same in evidence over trial counsel's objections at the sentencing hearing.
It should be first remembered that the appellant himself admitted this prior conviction on cross examination at trial.
This court beginning with Watson v. State, 392 So.2d 1274
Ala.Crim.App. 1980), cert. denied 392 So.2d 1280 (Ala. 1981) and continuing with such cases as Seritt v. State,401 So.2d 248 (Ala.Crim.App.), cert. denied, 401 So.2d 251 (Ala. 1981) and Smith v. State, 401 So.2d 251 (Ala.Crim.App.), cert. denied401 So.2d 257 (Ala. 1981) and James v. State, 405 So.2d 71
(Ala.Crim.App. 1981), has clearly established the constitutionality of the Alabama Habitual Felony Offender Act and the use by the trial courts of prior convictions for the purposes of enhanced punishment. These cases point out a variety of objections raised in trial court by defense counsel. The issues raised in this cause with reference to the 1960 burglary conviction of the appellant were fully covered in the foregoing opinions.
We are of the opinion that the trial court properly admitted the burglary conviction in question for the purposes of enhanced punishment in the case at bar.
See Smith v. State, 409 So.2d 927 (Ala.Crim.App. 1981), cert. denied, 409 So.2d 930 (Ala. 1982), and authorities therein cited.
This court has carefully examined this record in light of each issue raised by appellant's counsel and finds same free of error.
The judgment appealed from is due to be and the same is, hereby, affirmed.
AFFIRMED.
All the Judges concur. *Page 50