40 So.2d 737

### WOODARD v. STATE.
#### 8 Div. 716.

Court of Appeals of Alabama.
April 12, 1949.

Rehearing Denied May 3, 1949.

Smith & Tompkins, Jas. H. Tompkins, and Jas. E. Smith, Jr., all of Tuscumbia, for appellant.

A. A. Carmichael, Atty. Gen., and Thos. F. Parker, Asst. Atty. Gen., for the State.

**CARR, Judge.**

The appellant, Clyde Woodard, was jointly indicted with three other persons. The first count charges larceny of a bull, an animal of the cow kind, and the second count receiving stolen property. A severance was granted and the named indictee was tried separately. He was convicted under the second count of the indictment. His motion for a new trial was overruled and this appeal followed.

It appears without dispute in the evidence that Mr. A. D. Rea lost a young bull from a pen or stall. The theft occurred during the night. The next morning, by following the course of human and car or truck tracks, a searching party found the place where the animal had been freshly slaughtered. This was about five miles from Mr. Rea's barn and within a mile of the home of the appellant. The head and skin were found at the place where the bull was slaughtered, and these afforded convincing proof of the identity of the stolen animal.

The officers and others in the searching party went from this place to the home of the appellant where they saw his truck parked in his yard. Fresh blood and scraps of fresh meat were observed in the bed of the truck. About a quarter of the slain animal was discovered in the defendant's ice box.

The appellant was at home in bed, apparently drunk or sick. He had a pistol in bed with him.

The State's testimony tended to show that a day or two after the accused was placed in jail, he made a statement to an officer, concerning which the officer testified:

"He said he did that; he said Delbert Lawler and Ed Woodard and Charles King brought a yearling or calf to his house that night in a car and they carried it on down below his house somewhere and killed it, and he went down there and helped them finish dressing it or skinned it or something, and he said his boy, I don't remember his name, anyway, he drove his truck down where they killed the calf."

In regard to a conversation Mr. Rea had with the appellant, the former testified:

"A. Well, I ask him who was with him; he said, 'I am going to tell you'— he said, 'I am in jail, I will tell you, I am caught up with.' He said Delbert Lawler and Ed Woodard and Charles King brought the yearling over to his house about 3 o'clock in the morning and told him they had traded it for whiskey and wanted him to help kill it, and said they gave him a quarter of beef to help kill it.

"Q. Did he help dress it? A. Yes sir.

"Q. Did he say what part his truck played? A. He said he got his boy to drive the truck down there and bring the beef back; they wanted him to.

"Q. Did he say his boy got part of it? A. He said they gave him a quarter of beef."

The appellant denied that he made the quoted statements. He disclaimed any knowledge of the offense or any complicity in the commission of the crime. On the contrary, he testified that he was ill at his home all of the night in question.

The defendant's fifteen year old son testified that Delbert Lawler came to his home sometime during the night the theft was committed and engaged him to take his father's truck and convey the slaughtered animal from the place it was killed to a car. For this service he was given a portion of the meat, which he placed in the ice box. All of this was without the knowledge of his father.

This rather scant delineation of the tendencies of the evidence will serve to

illustrate our conclusion that the general affirmative charge was not due the accused. Jordan v. State, 17 Ala.App. 575, 87 So. 433; Humphrey v. State, 18 Ala.App. 251, 90 So. 504; Bryan v. State, 32 Ala.App. 80, 21 So.2d 577.

■ We hold, also, that we are not authorized, under the applicable rule, to charge error on account of the action of the lower court in denying the motion for a new trial. Kornegay v. State, 33 Ala. App. 338, 33 So.2d 405.

■ The predicates incident to the admission of the alleged confessions were in every respect sufficient and in adherence to the familiar rule. We see no useful reason to enter into a discussion of this matter. It may be observed that the mere fact that the accused was in jail at the time of the alleged confessions did not of itself render the statements inadmissible. Sampson v. State, 54 Ala. 241; Smith v. State, 248 Ala. 363, 27 So.2d 495; Dyer v. State, 241 Ala. 679, 4 So.2d 311.

■ Counsel for appellant in brief insists that he was disallowed the privilege of free cross examination on the inquiry of the voluntariness vel non of the alleged confession. One of the questions in this aspect, to which objections were sustained, is very lengthy and somewhat involved. It calls for a "yes" or "no" reply. If the witness had been consistent with his prior statements, parts of the question only could have been answered in the affirmative. The court should not be cast in error for refusing to require a witness to answer a question which is stated in such a confused form.

■ Whether or not the prosecuting party went to see a lawyer in behalf of the accused related to an immaterial matter. No attempt was made here to lay a predicate for any contradictory statement. The question to which we refer appears in this form: "Did you go to see Mr. Stell about getting him out of it?"

■ Over the State's objection the court did not require Mr. Rea to answer this: "I will ask you this question, if you didn't tell the defendant in jail that you were going to try to compromise it and get him out?" It does not appear with certainty that this inquiry related to a time prior to the alleged confession, nor that it was a part of a conversation concerning which the witness had previously testified.

■ It is urged that the State should not have been permitted to prove the reasonable market value of the stolen property. It was unnecessary to make this proof. The statute, Title 14, § 331, Code 1940, makes the stealing of a cow, regardless of its value, grand larceny. Cauley v. State, 14 Ala.App. 133, 72 So. 271.

■ We are here confronted with the task of deciding whether or not proof of this value was of such injurious effect as to require a reversal of the judgment below. The judgment, of course, should not be reversed on this account, unless, after an examination of the entire record, we should conclude that the error probably injuriously affected the substantial rights of the appellant. Slayton v. State, 234 Ala. 9, 173 So. 645; Supreme Court Rule 45, Code 1940, Tit. 7 Appendix.

■ The value of the stolen property was stated to be $75. There is no indication here that the animal was of extraordinary value due to special breeding. In other words, the facts do not warrant us in concluding or even surmising that the mind of the jury was in any manner inflamed by the theft and slaughter of a prize bull. The court and not the jury had the task of fixing the degree of punishment.

The instant case does not bear facts comparable to those in the case of Faulk v. State, 23 Ala.App. 213, 123 So. 104.

It is our considered opinion that Supreme Court Rule 45 has a purposeful application in the matter of present concern, and we so hold.

Appellant's counsel urges that reversible error should be based because of the following proceedings which we copy from the record:

"Q. What statement did he make?

"Defendant objects because the proper predicate is not laid, the questions asked

presume the answer, it is leading: he didn't ask what was said, he presupposed the witness did not ask those questions. Objection overruled. Defendant excepts.

"A. I asked him where he got this meat and he wouldn't tell me, said he didn't know about it, and I asked him about the meat scraps—

"Defendant objects and moves to exclude the part, 'I asked him where he got the meat and he wouldn't tell me.'

"By the Court: .

"Q. Did he tell you where he got the meat? A. No sir.

"By Mr. Almon: It is a denial.

"By the Court: Sustain the motion as to the conclusion of the witness that the defendant would not tell him where he got it. I ask you, when you asked him, did he tell you?

"A. No sir.

"By the Court: That part is overruled. Defendant excepts.

"By Mr. Almon:

"Q. What else did you ask him about the meat? A. I asked him if he could explain the blood—

"Defendant objects because it is not proper under the predicate laid, what the officers asked him isn't covered by the predicate. Objection overruled. Defendant excepts.

"A. I asked him could he explain the meat scraps and the blood in the back of the truck—

"Defendant objects and moves to exclude the statement. Motion overruled. Defendant excepts.

"A. He wouldn't answer.

"Defendant objects and moves to exclude that statement.

"By the court:

"Q. Did he answer? A. No sir.

"Defendant objects and moves to exclude all the testimony along this line. Motion overruled. Defendant excepts."

█ It is insisted that the witness was allowed over timely objections to testify that the accused would not answer certain questions, and this amounted to a conclusion of the witness. It is doubtful that the grounds of the objections or motions to exclude properly raise this question. But, this aside, it is clear that the witness did make this attempt; however, the trial judge did not approve this form of reply.

It is urged also that the accused was compelled to give evidence against himself in violation of his rights under the protective provisions of Section 6, Article I of the Constitution. The effect of the testimony we have quoted is that the witness asked the accused certain questions to which he made no reply. This was a statement of an occurrence at the home of the appellant, where a part of the stolen meat was found. We cannot accord merit to the insistences made in this particular.

█ Mr. Rea on cross examination was asked: "Did Clyde tell you he was sick and had been in bed all night?" The court sustained the solicitor's objections to this question. This inquiry related to a conversation the witness had with the defendant at the latter's home on the morning after the bull was stolen the night before.

The accused testified that he was sick and did remain in bed all night. His wife and son gave evidence to like effect. We hold that a denial of a reply to the quoted question did not materially affect the substantial rights of the appellant. Supreme Court Rule 45.

█ In his argument to the jury the solicitor stated: "If his conduct is good he may not go to the penitentiary" and "He can ask for probation." The court sustained objections to these assertions. Assuming, but not deciding, that these statements were improper, clearly they are of the kind from which any possible unfavorable influence could have been eliminated by proper instruction from the trial judge. Counsel did not request any corrective action. Stephens v. State, 250 Ala. 123, 33 So.2d 245.

We have herein responded to all questions which, in our view, present matters of meritorious value.

The judgment of the court below is ordered affirmed.

Affirmed.

BRICKEN, P. J., not sitting.