TYSON, Judge.
The indictment charged the appellant, John Stennett, with the unlawful sale of “500 mgs. of an amobarbital” to Ray Don Edwards, contrary to law. The jury found the appellant “guilty as charged in the indictment,” and the trial court entered judgment, setting sentence at five years imprisonment.
Ray Don Edwards testified that he was a Birmingham Police Officer and. had been assigned to work as an undercover narcotics agent in a seven county’ area, north of Birmingham. He testified that on January 6, 1973, he went to Blount County with Sergeant George Haze of the Birmingham Police Department in an effort to .make undercover buys. He testified that they arrived in Oneonta between 3:30 and 3:45 in the afternoon and went to the Sheriff’s Department. He testified that he left in an automobile alone, but that Sergeant Haze followed him in another automobile, and that they drove to Route 1, Sand Valley Road, to the residence of the appellant. He testified that the appellant’s wife and daughter were there. He said that there were some other persons there whom he did not know. From the record:
“Q. What did you do when you arrived there, then?
“A. I parked in the back yard, and two white males that were in the truck, they were leaving. John Stennett walked up to my car and I told him I wanted to buy some pills, and he said that he had just gotten some — well, no. He told me that he had some and that he was trying to get some more. We went — He told me to come on inside the house. We went inside the house and he stopped in the dining room and pulled the dresser out and got a white paper sack from behind the dresser. I went on in the living room and sat down. He took some capsules out of the sack and he told me that [sic] cost sixty cents a piece.
“Q. What were you looking for?
“A. What was I looking for?
“Q. What kind of pills? Did you specify what kind of pills you wanted?
“A. No, sir. I didn’t specify.
“Q. Where was his wife at that time? “A. Back in the back room.
“Q. Where was his daughter?
“A. She had came in and left back out. “Q. Was anyone in the room at the time he brought the sack with the pills in it— “A. No, sir.
“Q. —in there, besides you and he?
“A. No, sir.
“Q. Had the white people, the two white males, had they already gone?
“A. Yes, sir.
“Q. I believe you said they were leaving when you pulled up?
“A. Yes, sir.
“Q. Did you buy these pills?
“A. Yes, sir.
“Q. How many pills were there?
“A. Twenty capsules.
“Q. How much did you pay for them? “A. He said they cost sixty cents a piece. I gave him a twenty and two ones, and he gave me ten dollars change. It was twelve dollars.
“Q. Do you know how many pills was in that sack?
“A. No, sir.
“Q. What color were the pills?
*62 “A. A dark blue and orange with ‘F-47’ wrote on them.
“Q. What did you do then?
“A. I left.
“Q. What time was this when you made the purchase?
“A. It was 4:05.”
Officer Edwards testified that he then drove back to the Sheriff’s office where he placed the twenty capsules in a clear plastic bag, sealed them, and then put his initials on the envelope, and that Sergeant Haze did likewise in his presence.
On cross-examination, Officer Edwards testified that he had been to Blount County on two other occasions with Sergeant Haze, that on one occasion he had been to the appellant’s home and drank beer with him prior to the date on which the purchase in question was made. He testified that on the occasion of the purchase the appellant told him that the pills were sixty cents each, and that he gave the appellant a twenty dollar bill and two one dollar bills toward the purchase price.
Sergeant George Haze testified that he was a Police Sergeant with the Birmingham Police Department. He testified that he was working in a seven county area) north of Birmingham, on a Federal grant, assisting in policing drug traffic. He testified that on January 6,1973, he, accompanied by Ray Don Edwards, drove to Oneonta and went to the Sheriff’s office. He testified that they arrived there at approximately 3:45 in the afternoon. He testified he instructed Officer Edwards to go to the home of the appellant, John Stennett, and that he followed Officer Edwards in a separate vehicle as he proceeded out Sand Valley Road. He testified that a short time later, he met Officer Edwards back at the Sheriff’s Department at about 4:30 in the afternoon, and that Officer Edwards produced twenty blue and orange capsules. He testified that he placed these capsules in an envelope at that time, and that each officer then placed his initials on the envelope. Sergeant Haze testified that he kept possession of the envelope containing the capsules until he delivered them to the office of the State Toxicologist on January 10, 1973.
On cross-examination, Sergeant Haze testified that he had used a physician’s desk book and determined that the capsules in question were Amosect tablets, manufactured by Eli Lilly Company. He testified that he had also been in Blount County on other occasions, assisting in drug investigations, that he was present on February 23, 1973, when the warrant of arrest was issued for the appellant, John Stennett, and that he was with Sheriff’s Deputies on the occasion when the appellant was arrested.
John M. Case testified that he had been with the State Department of Toxicology for a little over six years. He testified that he made approximately thirty to forty drug identifications each month. He testified that he received an envelope from Sergeant George Haze on January 10, 1973, that he examined the capsules contained in the envelope, and determined that each contained “twenty-five milligrams of amobarbital each.”. He testified that amobarbital is a controlled substance within the meaning of the Alabama Controlled Substances Act, and that these capsules were sold under the trade name of Amosect, and manufactured by Eli Lilly Company. He testified that these capsules required the prescription of a registered medical doctor.
Ray Don Edwards was recalled to the witness stand and testified that he did not have a prescription of a medical doctor when he purchased the capsules on January 6, 1973, from the appellant.
Earl Deavers took the stand and testified that in the Fall of 1972, he had carried Ray Don Edwards out to the house of the appellant, John Stennett. He testified that he had known the appellant for five or ten years. He testified that he saw Edwards on three occasions in Oneonta, and that on one occasion they went “running around looking for women,” that they had bought some beer and whiskey together, but that he did not see the appellant with Edwards, nor did he go to the appellant’s home on January 6, 1973.
*63 Elouise Henderson testified that at times she had lived with the appellant as his wife. She said that on January 6,1973, the appellant was staying down at Calvin Davis’ house, which was down the road from her home. She said that the appellant had gone by her house that day, and that Ray Don Edwards had not been by her house at all.
On cross-examination, Mrs. Henderson admitted she had had a nervous breakdown about two years previously, but said she was at home all day on January 6, 1973, because she did not go anywhere else that day, and that she did not see Officer Edwards at her house at all. She does remember a later date when officers came out and arrested the appellant.
John Lee Stennett, Jr., testified that on January 6, 1973, he was renting a house from Calvin Davis “over on Cherry Hill.” He testified that on January 6, 1973, he did not know Officer Ray Don Edwards, and that, in fact, on that day he had been in Huntsville, and did not return to Oneonta until that night about 6:00. He testified that he had been in Huntsville about three days. He testified that he remembered one earlier time when Ray Don Edwards had come to Oneonta, and that they had gone out and “got falling-down drunk together.” He denied that he had ever sold Officer Edwards any drugs at any time, or sold drugs to anyone.
On cross-examination, the appellant admitted going to Mrs. Henderson’s home when he returned from Huntsville on January 6, 1973, but denied seeing Ray Don Edwards, or selling drugs to him on that date. The appellant further testified that he was a disabled Veteran, and at one time had worked with the Board and Recreation Center at Oneonta, and used to drive a school bus.
I
In the opening statement to the jury, we find the following:
“THE COURT: All right. Make your opening statements to the jury.
“MR. ROBINSON: You are fixing to hear a case about the Defendant selling marijuana—
“MR. NASH: We object, Your Honor.
“MR. ROBINSON: Judge, this is an-— Let’s have this off the record. “(Whereupon, there was an off the record discussion at the bench between counsel for the respective parties, and the Court, out of the hearing of the Court Reporter, after which, the following occurred:) “THE COURT: Ladies and gentlemen of the Jury, it looks like we have had a little bit of a misunderstanding here, which may be rectified. This is a felony charge. You don’t know anything about it yet, other than what you have been qualified on. It will be necessary for you to stay together for the time being at least. Sheriff, when can you get them to dinner?
“THE SHERIFF: Any time.”
Subsequently, the respective attorneys and the court reporter returned to the courtroom, and a discussion was had outside the presence of the jury pertaining to the comment of the district attorney above set out. At this time, defense counsel made a motion for a mistrial, which was overruled by the trial court outside the presence of the jury. The discussion is as follows:
“MR. ROBINSON: Judge, of course. I was really under the impression that the case was a marijuana case. However, I see no difference in maybe an analogy such as this. If the man had been charged with murder and I made the statement that he is charged with manslaughter, I don’t see that the Jury could take it from this statement that I made that there is any other cases pending. “THE COURT: As I recall it, the only thing that was said was that you started to make your opening statement under this case involving the sale of marijuana, and there was an immediate objection. I don’t recall anything else being said in the presence or hearing of the Jury that would create that impression.
“MR. NASH: If it please the Court, excuse me now. There was further state *64 ments made that — in the presence of the Jury — that this involved a mix up of cases, or something of that nature. I believe I am right in this. Which makes it a clear implication that there is other cases pending in which the selling of marijuana is charged. I think the statement — I know Mr. Robinson did not make it with the intent to do anything to prejudice this Defendant, but nevertheless we respectfully submit it has prejudice to the Defendant in the trial before this Jury. “THE COURT: I don’t believe it has. I have full confidence in the jurors of this County going by the evidence in each case. Unless the State consents to it, I will overrule the motion for a mistrial. “MR. ROBINSON: I just don’t believe it would be — I mean the only thing I would have to think of, would be what the Supreme Court might do about it. I just don’t believe that—
“THE COURT: Most of them have had enough courtroom experience, I don’t think they will consider a Jury would be influenced any way by that.
“MR. NASH: We respectfully except to the Court’s ruling.”
As may be seen in examining the above discussion, counsel for defendant made an objection to the district attorney’s argument which was sustained by the trial judge. At this point, a recess was declared and the jurors were sent to lunch. Thereafter, the ensuing discussion, which included a motion for mistrial was made outside the presence of the jury. The trial court made the observation that it believed the jurors would go by the evidence in this ease and overruled the motion for a mistrial.
The rule covering this situation is well set forth in an opinion of the Supreme Court of Alabama in Lambert v. State, 208 Ala. 42, 93 So. 708, wherein it pointed out that where counsel for the appellant merely objects to the argument, and such objection is sustained, and counsel did not request the court to instruct the jury to disregard such argument, or to invoke a further ruling by the court on such argument in the presence of the jury, and on the record, then no ruling is presented for review on appeal by such objections. Woodard v. State, 34 Ala. App. 391, 40 So.2d 737; Veith v. State, 48 Ala.App. 688, 267 So.2d 480, and authorities therein cited.
II
During the redirect examination of Earl Deavers, witness for the appellant, he was being interrogated about where he carried Officer Edwards on occasions other than January 6,1973, which were answered, and as to other places where the appellant lived when the following occurred:
“Q. Where you carried Ray Edwards? “A. I carried up to John Stennett’s wife’s house. That’s where we went. “Q. That’s Elouise Stennett?
“A. That’s right.
“Q. At that time, John wasn’t living there?
“A. He wasn’t living there at that time. “Q. John wasn’t there?
“A. He wasn’t living there at all.
“Q. John wasn’t there, was he?
“A. No.
“Q. You all get out over there?
“A. No, sir. We didn’t get out of the car.
“Q. Was John’s car there?
“A. No sir. Not the one John drives, but three of his cars were up there; but not the one he drives.
“Q. Did you go on down to the other house that you say—
“MR. BAINS: We object to this. This is evidently another day.
“A. We did not.
“MR. BAINS: He just goes on and on about where he went to, which car, and all of that.
“THE COURT: I don’t see the relevancy to this, Mr. Walker.
“MR. NASH: If it please the Court, this — the man we are talking about, talking and asking him where he went, has been on the stand and testified as to certain things he did and didn’t do. I think we are entitled to come in with testimony establishing what we contend *65 the actions were that were made by this Ray Edwards.
“THE COURT: Of course the issue is just this: Whether or not on the date alleged, which I believe was January 6th, 1973, did this Defendant sell the substance alleged—
“MR. NASH: I realize that, but— “THE COURT: Where he went to and who he saw several months later with other people, I just don’t quite see the relevancy of it.
“MR. NASH: We reserve an exception, may it please the Court.
“THE COURT: All right.
“MR. WALKER: No further questions. “MR. BAINS: No questions.
“MR. NASH: You can come down Earl.”
Appellant’s counsel asserts the ruling of the trial court as above set forth as erroneous, being an improper comment upon the evidence by the trial judge.
We do not agree, as it is clear that the trial judge was simply pointing out that he did not see the relevancy of the testimony as to other places on other occasions, and as such, this was simply an explanation of his ruling and its legal effect, rather than as a comment upon the evidence. Therefore, no error is shown. Beddingfield v. State, 47 Ala.App. 677, 260 So.2d 408; and Hinkle v. State, 50 Ala.App. 215, 278 So.2d 218.
We have carefully examined this record, as required by law, and find same to be free from error. The judgment of conviction is therefore due to be and the same is hereby
AFFIRMED.
All the Judges concur.