122 So.2d 165

Arthur Harrison **SLEDGE**

v.

**STATE.**

**8 Div. 655.**

Court of Appeals of Alabama.

May 10, 1960.

Rehearing Denied June 30, 1960.

MacDonald Gallion, Atty. Gen., and Jerry L. Coe, Asst. Atty. Gen., for the State.

Pounders & Wilson, Florence, for appellant.

CATES, Judge.

Sledge appeals from a conviction of buying, etc., a hog of the value of $45 owned by Edward Mauldin knowing it to have been stolen. Code 1940, T. 14, § 338.

The jury, in addition to finding him guilty, also recommended mercy. The trial judge sentenced him to imprisonment for one year and one day.

The proof for the State was adduced primarily from the testimony of some five thieves who had been convicted beforehand of hog stealing. They separately testified as to selling some eleven to thirteen hogs to Mr. Sledge at times during 1958 ranging from "the early part of the year" to sometime in late August or early September. Five of the hogs had been stolen from the farm of Vernon Crockett, and were in no wise connected with Mr. Mauldin either by ownership or bailment.

Not one of the thieves told Mr. Sledge that the hogs were stolen. At several points during the admission of testimony of various thefts and subsequent sales to Mr. Sledge defense counsel made appropriate objections and the trial judge overruled, stating that he permitted the testimony to go to the jury only on the theory that the evidence had a tendency to show a pattern.

As to the market value of the hogs, Mr. Mauldin testified the price range for July, August and September was from 17½ to 24 cents per pound, presumably at the nearest market to Mr. Mauldin's farm, i. e., Tuscumbia. Mr. Sledge, who lived at Elgin's Cross Roads on the north side of the Tennessee River some seventeen miles from Florence, was paying the thieves prices that ran from 12¾ to 15⅔ cents per pound,[1] covering a period from the early part of the year up to late August.

In all but two cases the hogs were carried in the trunks of cars to Mr. Sledge's house. There he had a barn and a pasture of some 20-odd acres. He had for many years taken out a livestock dealer's license (Code 1940, T. 2, § 385), but had not renewed it that year because of illness. He was 68 years old at the time of trial.

■ At the close of the State's case, Sledge moved to exclude the evidence on the ground that the State failed to show a crime was committed in Lawrence County. Code 1940, T. 15, § 98, provides:

"When property is stolen in one county and carried into another, the jurisdiction is in either county."

Nothing here shows that Sledge bought or agreed to buy the hogs before they were stolen, hence § 98 would not apply as it would to a continuous or ambulatory offense. See opinion of Thomas, J., in Milam v. State, 240 Ala. 314, 198 So. 863.

No evidence was given that Sledge's home was close enough to Lawrence County under Code 1940, T. 15, § 95, to give the Lawrence Circuit Court jurisdiction of any buying or receiving at his home in Lauderdale County.

■ This motion (to exclude because of lack of venue) was due to be denied if the State proved that Sledge, while in Lawrence County, (1) bought, received or concealed a hog (2) belonging to Mauldin (3) knowing, or having reason to believe, it to have been stolen. We believe the State made out a prima facie case of territorial jurisdiction. Hence, the trial judge properly denied the motion to exclude on the claim of failure to show venue. Equally, Sledge did not waive proof of venue. Hence, the evidence of the other purchases must shed light on this one transaction which occurred in Lawrence County.

■ Here, in examining the crucial statutory element under § 338, supra, we are concerned with whether Sledge wittingly or unwittingly bought a stolen hog or had reasonable ground for believing he had bought a stolen hog. Receiving stolen goods may present three separate facets of the mind of the prisoner: (1) knowledge of the goods having been stolen, the *scienter*; (2) intent to deprive the true owner of possession, the *animus furandi*; and (3) criminal intent generally, the *mens rea*.

Wigmore (Evidence, 3rd Ed.), §§ 324, 325, divides the instant problem into two principles: the Knowledge principle; and

[1] The testimony of the various witnesses as to the weight of the different hogs sold varied and was given in approximate ranges e. g., "160 to 175."

the Intent principle. See United States v. Brand, 2 Cir., 79 F.2d 605.

However, to take either of Wigmore's principles, it would be necessary to demonstrate that the admission would not violate the rule against reception of evidence of other offenses or of matter from which complicity in another offense might be inferred. Mason v. State, 259 Ala. 438, 66 So.2d 557, 42 A.L.R.2d 847 (proof of other robberies linked with the charged robbery only in time and in identity of the defendant reversible error).

We consider our cases follow the view of the minority in People v. Marino, 271 N.Y. 317, 3 N.E.2d 439, 105 A.L.R. 1283. Piano v. State, 161 Ala. 88, 49 So. 803; Morris v. State, 17 Ala.App. 126, 82 So. 574; Leverett v. State, 18 Ala.App. 578, 93 So. 347; Glover v. State, 21 Ala.App. 423, 109 So. 125; Little v. State, 24 Ala. App. 484, 136 So. 864; and Davis v. State, 39 Ala.App. 515, 104 So.2d 762. See also Gassenheimer v. State, 52 Ala. 313; Coplon v. State, 15 Ala.App. 331, 73 So. 225; McElroy, Evidence in Alabama (2d Ed.), § 70.23; Coleman v. People, 55 N.Y. 81, and Copperman v. People, 56 N.Y. 591.

■ This view is that, to show scienter of receiving stolen goods, proof of other offenses must be confined to purchases from the same thief from whom the receiver got the goods laid in the indictment.

■ Here, on the aspect of pattern, the trial judge admitted evidence of Mr. Sledge's buying three hogs which were stolen from Crockett by (and sold to Sledge by) Henry Red, Ned Ricks and Louis King early in the year. Except for the hogs having been kept in a pen at the house of Denver Stewart in Lawrence County, they were in no wise connected with the larceny in the last part of August which produced the hog which was the subject of the indictment. This latter animal was one of the three stolen by Denver Stewart, Leroy Harris and Willy King.

Again, evidence was admitted of Louis King and Ned Ricks stealing three hogs from Crockett. These animals were sold to Sledge at his home in Lauderdale County some three weeks after the "early part of the year." Another instance showed hogs stolen by Nathaniel Stewart, Louis King and Jimmy Byrd were bought by Sledge at his home, again without showing participation by Denver Stewart, Leroy Harris and Willy King.

■ Defendant's requested charge 3 mentions three hogs. The trial judge properly refused it, stating that the indictment called for only one hog. This point would also cover his refusal of charges 1, 2 and 4 which he withdrew as permitted under Kelly v. Hanwick, 228 Ala. 336, 153 So. 269.

■ Sledge's charge 5 was affirmative, and hence properly refused. Charge 6 was evidently intended for another case since it called for an acquittal on Count II; the record shows a one-count indictment.

■ During oral argument the solicitor said, "I don't know what the Judge would do about it, whether it would be a matter of probation or not." The court corrected any error in this remark by saying "Gentlemen of the jury, don't consider that. 'Guilty' or 'Not guilty' is the only matter for your consideration, and don't consider probation."

In the event of a new trial, it is also suggested that more explicit evidence, if available, should be required by the trial judge as to the market value not only of any hogs coming under the indictment but also of any others as to which it is attempted to show inadequate purchase price, if the transactions are otherwise admissible.

For the admission of evidence of other transactions tending to show other offenses not coming within the exception in the Piano case, the judgment below is reversed and the cause remanded there for new trial.

Reversed and remanded.