326 So.2d 307

**Donnie VINES, alias**

v.

**STATE.**

**6 Div. 896.**

Court of Criminal Appeals of Alabama.

Dec. 16, 1975.

Rehearing Denied Jan. 20, 1976.

James R. Shaw, Bessemer, for appellant.

William J. Baxley, Atty. Gen., and Randolph P. Reaves, Asst. Atty. Gen., Montgomery, for the State.

HARRIS, Judge.

Appellant was put to trial upon a three-count indictment charging, (1) burglary, (2) grand larceny, and (3) buying, receiving, concealing, etc. Omitting the formal parts, the indictment reads as follows:

"1. The Grand Jury of said County, charges that before finding of this indictment *Donnie Vines, alias Donald H. Vines,* whose name to the Grand Jury is otherwise unknown, did, with intent to steal, break into and enter a shop, store, warehouse, or other building of *R. V. Hubbard, Oddie Hubbard, George Wood and Millard McConnell, a partnership, d/b/a Cherry Tree Apartments,* in which goods, wares, or merchandise was kept for use, sale or deposit;

2. The Grand Jury of said County further charge that, before the finding of this indictment, *Donnie Vines, alias Donald H. Vines,* whose name to the Grand Jury is otherwise unknown, feloniously took and carried away *3 rolls of green shag carpet, of the value of $400.00; one roll vinyl floor covering, of the value of $50.00; and one General Electric refrigerator, of the value of $228.00, all in the total value of $678.00,* the personal property of *R. V. Hubbard, Oddie Hubbard, George Wood and Millard McConnell, a partnership, d/b/a Cherry Tree Apartments;*

3. The Grand Jury of said County further charge that, before the finding of

this indictment, *Donnie Vines, alias Donald H. Vines,* whose name to the Grand Jury is otherwise unknown, did buy, receive, conceal, or aid in concealing, *3 rolls of green shag carpet, of the value of $400.00; one roll vinyl floor covering, of the value of $50.00; and one General Electric refrigerator, of the value of $228.00; all of the total value of $678.00,* the personal property of *R. V. Hubbard, Oddie Hubbard, George Wood and Millard McDonnell, a partnership, d/b/a Cherry Tree Apartments,* knowing that they were stolen, or having reasonable grounds for believing they were stolen, and not having the intent to restore them to the owner, against the peace and dignity of the State of Alabama."

He was represented by retained counsel at arraignment and trial. He pleaded not guilty. Trial counsel represents him on this appeal.

The evidence for the state and appellant is in hopeless conflict. Only a jury could unravel these conflicts and arrive at a verdict. At the conclusion of the state's case the trial court on motion of appellant dismissed the burglary count and submitted the case to the jury on the two remaining counts. The jury returned a verdict in the following language:

"We, the jury, find the defendent guilty of buying, receiving and concealing stolen property as charged in the indictment and fix the value of the stolen property at $700.00. Norris L. Headley, Foreman."

Appellant was sentenced to six years imprisonment in the penitentiary.

Mr. R. V. Hubbard was the first witness called by the state. He testified that he and three other men formed a partnership and had built the Cherry Tree Apartments located on Cherry Court in Hueytown, Jefferson County, Alabama. He stated that he knew appellant and that they graduated from high school together. He further said that appellant did not have a lease in

the apartment complex but indicated he thought he stayed there with a woman sometimes.

Hubbard further testified there was a rather large storage room under one of the apartments for the common use of the tenants. That he was in the business of constructing apartments and with the help of some employees he had stored in the storage room a new General Electric refrigerator (still in the crate), some vinyl flooring and some green shag carpet. That around 7:00 p. m., on April 16, 1974, he received a telephone call and as a result of that call he went to the storage room of the Cherry Tree Apartments and found the above listed items missing. He stated that the refrigerator was valued at $228.00, the green carpet was worth $400.00, and the vinyl floor covering was worth $150.00. He said he had put blue ink circles on the back of the carpet so that he could identify it.

Hubbard further testified that on April 18, 1974, he reported the theft of these items to a Sergeant Nichols of the Hueytown Police Department and that an investigation got under way to try to locate this property. He gave Sergeant Nichols the serial number of the refrigerator and a description of the other missing property. He stated that these missing items of personal property were returned to him on May 25, 1974, and that he got a release for them on that date from the Hueytown Police Department.

On cross-examination Mr. Hubbard testified there were two doors to this storage room and they were kept locked. That there were only two keys to this storage room. That he had one key and the resident manager, Jackie Greer, had the other key. That if any of the tenants wanted to use the storage room, they had to contact the resident manager. That on the night of April 16, 1973, he contacted the resident manager and asked him if saw anyone move this property from the storage basement and he said he did not.

On redirect examination Mr. Hubbard testified that on the night of April 16, 1973, the basement doors were locked as well as the windows. He stated that the top pane next to the door was broke "so that you could put your hand in and unlock it." The trial court excluded this last statement from the jury.

On recross examination this witness testified that one Marsha Glover was a tenant at the Cherry Tree Apartments but that according to his records, she moved out on March 30, 1974.

Mr. Michael L. McLaughlin testified that in 1974 he lived at the Cherry Tree Apartments for about five months and was living there during the month of April when appellant came to his apartment and asked him and his roommate, Larry Hanna, to help him move some furniture. He said they went down to the storage room and helped appellant put some carpet, a roll of linoleum and a crated refrigerator on the back of a pickup truck. That appellant paid each of them twenty dollars for their help.

On cross-examination he testified that he was never indebted to appellant. That he thought it was on April 16, 1974, that they helped appellant load the pickup truck and it was after dark. He denied that he took this property and sold it for $200.00, and he denied telling a person by the name of Coston that he took this property and sold it and hung the whole thing on appellant.

On redirect examination he stated that appellant was alone with the pickup truck when he helped him load it.

Gwenda Shope testified that in April of 1974 she lived at 805 Third Avenue, Midfield, Alabama. At that time she was in the market for a refrigerator and carpet and had been shopping all day with one Wayne Coates. That on Saturday, April 13, 1974, she and Coates went to a place called Dan's Tavern on Third Avenue in Central Park. The place was full of people and they sat in a booth with three or four other people. She mentioned that she was interested in buying some carpet and a refrigerator. She was introduced to a man whose nickname was "Dog man" who told her he thought he could get these items for her. She found out later that "Dog man" was the appellant. She signed a check in blank and gave it to Wayne Coates to pay for these items. She further stated that a refrigerator, in a crate or box, some green shag carpet, and a roll of vinyl floor covering were delivered to her house. She was not present when these items were delivered to her home. She wanted an 18 foot refrigerator but a 16 foot refrigerator was delivered along with the other items. After the delivery was made, she called appellant's residence and a woman answered the phone and she asked her to have Mr. Vines return her call. She stated that she got appellant's telephone number from Wayne Coates as Mr. Vines' telephone number was not listed in the directory. She stated the purpose in calling Mr. Vines was to tell him she wanted an 18 foot refrigerator. She said she received a telephone call from a man who identified himself as Mr. Vines. The court, upon objection, would not permit her to relate their conversation.

This witness was shown State's Exhibit No. 1, and she identified the exhibit as the check she had signed in blank and given to Wayne Coates. This check had the name "Gwenda H. Shope" printed in the left upper corner and was signed "Gwenda H. Shope," and under her signature was her address and her telephone number in Midfield, Alabama. The check was drawn on her checking account in The First National Bank of Birmingham—Valley Road Branch—and was dated "4/17/1974," and it was payable to "Donnie Vines in the amount of $360.00." The original check is before us and shows that it was endorsed by "Donnie Vines." This witness further testified that after signing this check in blank and giving it to Coates, she did not see it again until after it had cleared her

bank. She also testified that she sold the refrigerator to a man named "Letson."

Sergeant David A. Nichols of the Hueytown Police Department was put in charge of investigating the stolen property. He contacted Mr. R. V. Hubbard who told him the missing property was three rolls of green shag carpet, one roll of vinyl floor covering and one G. E. Refrigerator, gold in color, serial number FP 643547. In the course of his investigation he went to the residence of Gwenda Shope in company with Mr. Hubbard and Sergeant Eddings of the Bessemer Sheriff's Office. He testified that they walked up the driveway to the house and saw three rolls of carpet in the carport. Mr. Hubbard looked at the rolls of carpet and stated it was his carpet. He knocked on the door and had a conversation with Mr. Shope. As a result of that conversation Mr. and Mrs. Letson were contacted at 29th Avenue, Hueytown. The Letsons brought a G. E. Refrigerator to Police Headquarters and the serial number was checked, and it was the same number that Mr. Hubbard had given to Sergeant Nichols. All of the stolen property was recovered and it was released to Mr. Hubbard on May 25, 1974.

Mr. Wayne Coates testified that he rented an apartment from Mrs. Shope at 805 Third Avenue, Fairfield Highlands, in Midfield. He stated that he had known appellant four or five years and that on or about April 17, 1974, appellant came to the home of Mrs. Shope and he thought he came in a truck. He said two men delivered some carpet and a refrigerator and he gave the check signed in blank to appellant on that occasion. He identified State's Exhibit No. 1 as the check he gave appellant at the time the property was unloaded.

On cross-examination he testified that a pickup truck was there when the property was unloaded but could not be positive whether appellant drove the pickup truck or whether he came in another vehicle. He further testified that he gave Mrs. Shope's check in the amount of $360.00 to appellant in payment of some property that she was supposed to be getting.

Mrs. Marsha Glover testified that at one time she was married to appellant. She married him in March of 1974 and soon divorced him. She thought the divorce became final in June of that year. She stated while they were married, she lived in the Cherry Tree Apartments. She further testified that around April 15, 1974, she and appellant went to the Long Lewis Ford Place in Bessemer and rented a truck. That they were going to use the truck for her to move. She said she was employed as a nurse at a local hospital and her hours of employment were from 2:30 to 10:30 p. m. She further stated that appellant called her at work on April 16, 1974, around 7:00 and told her he still had the truck and that he was at the Cherry Tree Apartments when he called her. She further testified that appellant in that telephone conversation told her he was going to take some carpet and a refrigerator out of the basement of the apartments at Cherry Tree. She told him she didn't want any of this property at her house in Hueytown.

On cross-examination she denied that she had cohabitated with appellant and held herself out as his wife a year before their formal marriage. She further denied having stayed with appellant on several occasions since they were divorced. She admitted knowing one Hank Johnson but denied that she had lived with him. She also admitted knowing two other men but when she was asked if she had lived with them, the state objected and the objection was sustained.

From the record:

"Q. Mrs. Glover, you want to see Donnie go to jail, don't you?

"Mr. Reynolds: I object to that.
"A. No, sir.

"The Court: Sustained.

"Mr. Shaw: No further questions, Judge."

Bob Coston testified in behalf of the defense. According to his testimony he lived at the Cherry Tree Apartments and knew Mike McLaughlin. He stated that some time after April 16, 1974, McLaughlin told him that "They've got Donnie for something he didn't do."

Appellant testified and admitted having received the check for $360.00 from Wayne Coates. He stated he had been at the Shope residence for about five minutes when McLaughlin arrived. Appellant claimed he went there to collect $165.00 that Coates owed him and he allowed Coates to write him a check (signed by Mrs. Shope) for $360.00 and that he gave Coates cash in the amount of $200.00 to pay McLaughlin for some material that Coates said McLaughlin was delivering to him.

He denied that he had ever gone to McLaughlin's apartment and asked McLaughlin to help him load any items into a pickup truck. He further testified that he did not steal or participate in the theft of the items listed in the indictment from the Cherry Tree Apartments.

On cross-examination he explained that the debt of a $165.00 owed him by Coates was a bet on a football game. He stated that he saw McLaughlin when he came to the Shope residence but he did not see him deliver a refrigerator or any carpet and that he did not help him unload any of these items. He did say that he saw a crate McLaughlin had there which was approximately the size of a refrigerator crate.

Appellant admitted that he had been convicted of five cases of forgery.

Larry Hanna testified for the defense. He said he was McLaughlin's roommate for several months. That he did not have an apartment leased in his name but he paid Mike his share of the rent. He denied that appellant had asked him and McLaughlin to help him move any items out of the basement of the Cherry Tree Apartments and that they were never paid any money for assisting appellant to move a refrigerator and any carpets.

Hanna further testified that he knew McLauglin's general reputation in the community and that it was bad and that his reputation for truth and veracity was bad and that he would not believe him on oath.

On rebuttal the state recalled Sergeant David A. Nichols who testified that he knew appellant's general reputation in the community in which he lived and that it was bad. He further testified that appellant's reputation for truth and veracity was bad and that he would not believe him on oath.

Wayne Coates did not testify that appellant gave him $200.00 cash in exchange for the $360.00 check he gave appellant the time the property belonging to Mr. Hubbard was delivered to the home of Mrs. Shope. He testified he made the check payable to Donnie Vines in the amount of $360.00 for the property that was delivered that night as he understood that was the amount agreed upon.

Appellant admitted that his nickname was "Dog man" or "Dog Meat" as testified to by Mrs. Shope when she was introduced to him in Dan's Tavern when there was a discussion about some carpet and a refrigerator. It was at this meeting that appellant made the statement that he thought he could get these items for her.

■ Scienter is an element of proof necessary to sustain a conviction of receiving stolen property, but scienter may be inferred by the jury from the facts and circumstances of the entire transaction. *Bills v. State*, 49 Ala.App. 726, 275 So.2d 706; *Paul v. State*, 48 Ala.App. 396, 265 So.2d 180.

■ The possession of property recently stolen does not raise a presumption or inference, as a matter of law, of the guilt of the possessor, but the presumption arising

from such possession is a matter of fact to be passèd upon by the jury. *Milligan v. State,* 45 Ala.App. 112, 226 So.2d 172.

■ The corpus delicti may be proven by circumstantial evidence as well as by direct proof. *Johnson v. State,* 41 Ala.App. 351, 132 So.2d 485; *Matthews v. State,* 42 Ala.App. 406, 166 So.2d 883.

■ In *Character v. State,* 51 Ala.App. 589, 287 So.2d 916, this Court held:

"The requisite scienter for the crime of receiving stolen property may be inferred from the recent possession of stolen goods. *Stanley v. State,* 46 Ala.App. 542, 245 So.2d 827.

In *Buckles* [*Buckles v. State,* 291 Ala. 352, 280 So.2d 814 (1972).], supra, our Supreme Court cited with approval the following quotation from the case of *Aron v. United States,* 8 Cir., 382 F.2d 965, 970:

'The doctrine that possession of recently stolen property gives a permissible inference of knowledge on the part of the possessor that the property had been stolen, unless the possession thereof is accounted for in a reasonable and satisfactory manner consistent with the circumstances of the possession, is a factually sound and a necessary evidentiary rule. Without this evidentiary rule in criminal cases it would be almost impossible to consider for conviction any of the possessors or fences of stolen property unless they admitted that they knew the property to be stolen, which is an admission not likely to be forthcoming.' "

We are hard pressed to believe that appellant's presence at the Shope home at the very time the stolen goods were delivered was a coincidence, ostensibly to collect a gambling bet on a football game. The jury could reasonably infer that he was there to collect for the stolen property that he had taken and concealed from the Cherry Tree Apartments. This was in keeping with the telephone call he made to his ex-wife at 7:00 p. m., on April 16, 1974, in which he told her he was going to take the property.

The answer that Mrs. Glover made to the question if she didn't want to see Donnie go to jail was favorable to appellant and he cannot validly complain that she was biased.

■ Conflicting testimony is for the jury and a verdict thereon is conclusive on appeal. *Stephenson v. State,* 28 Ala.App. 418, 185 So. 910; *Eady v. State,* 48 Ala.App. 726, 267 So.2d 516.

■ Where there is legal evidence from which the jury can by fair inference find the defendant guilty, this Court has no right to disturb the verdict. Whether there is such evidence is a question of law, its weight and probative value are for the jury. *Haggler v. State,* 49 Ala.App. 259, 270 So.2d 690; *Price v. State,* 53 Ala.App. 465, 301 So.2d 230.

■ There was no error in sustaining the state's objections to questions posed to Mrs. Glover as to her relationship with other men. In *Moulton v. State,* 88 Ala. 116, 6 So. 758, the Supreme Court said:

"The doctrine is too familiar to require support, from a citation of texts or adjudge cases, that character, good or bad, can only be established by evidence of general reputation."

We have carefully examined the record for errors injuriously affecting the substantial rights of appellant and have found none.

The judgment of conviction is affirmed.

Affirmed.

All the Judges concur.