Appellant was put to trial upon a two-count indictment charging, (1) grand larceny, and (2) buying, receiving, concealing or aiding in concealing, etc., stolen property. Prior to arraignment appellant was found to be indigent and the Court appointed counsel to represent him. At arraignment he pleaded not guilty. The jury returned a verdict finding the appellant guilty under count two of the indictment. The Court sentenced him to ten years imprisonment in the penitentiary. After sentence was imposed appellant gave notice of appeal and was furnished a free transcript. Trial counsel was appointed to represent him on appeal.
The evidence presented by the State tended to show that the Barbecue Ranch located on Highway 331 south of Opp in Covington County was broken into on the night of November 26, 1977, and one RCA color television set of the value of $325.00 was stolen. The owner of the premises, Mr. Charlie Stewart, testified that when he closed his business on the night of November 26, 1977, the television set was in the building. The next morning he found the glass in the front door was broken and the door open. He checked and found the television set was missing, along with five cartons of cigarettes and a metal box containing his business records. He stated that he later identified the television set at the Opp Police Department and recovered it. He had not seen his metal box or his business records since the break-in, nor did he ever recover the five cartons of cigarettes.
Mr. Johnny Joe Wesley testified that he did not know appellant personally but knew him by sight. He identified him in the courtroom. He further testified that in late 1977 he purchased an RCA color television set from one Bobby Edgar. He first saw the set on a bookcase in Edgar's home. He carried the set to a man by the name of Q.P. Taylor and sold it to him and had not seen it since. He stated that an officer from the Opp Police Department along with a Covington County Deputy Sheriff contacted him with reference to this television set.
Opp Police Officer Bill Norris testified on voir dire out of the presence and hearing of the jury. According to Norris he investigated the burglary and larceny at the Barbecue Ranch. In the course of his investigation he interviewed appellant at his mother's house on December 4, 1977. Before asking him any questions he read him his constitutional rights from a Miranda
card and appellant responded by saying he understood his rights and signed a waiver of rights form. Appellant then gave an oral statement to the officer and he was carried to the station house. The next morning the officer got appellant from the jail cell and again read him the Miranda rights and warnings. Appellant told the officer that he understood his rights and was ready to make a statement.
Officer Norris further testified that no one in his presence or hearing threatened appellant, nor was he offered any reward, promise or other inducements to get him to make a statement. The officer wrote appellant's statement consisting of two pages and he signed his name to each page.
On cross-examination his counsel asked him why he made the statement and he replied, "I did not have anything to hide."
Back before the jury the State laid the pre-Miranda predicate and appellant's counsel said he had no objections to either the waiver of rights form or the statement signed by appellant. Thereupon the Court permitted appellant's signed statement to be read to the jury. The statement is as follows:
 "Statement of Timmy Wilson, Age twenty-one, 12-5-77; I left the house before dark on Saturday afternoon, November twenty-sixth. Went down to Winston's Place. I sat down there and drank beer. Roy and Charles Smith was already there. We left there and went to the King's Den. We watched T.V. with Sonny Bozeman for awhile. I don't remember leaving the King's Den. I do remember leaving and going to the Four Sons, me and Roy and Charles. I sat and talked to Jimmy Doyle, my brother. Roy *Page 1169 
left us at the Four Sons and went and got his car. Then I left and went home. I don't remember going riding around after I left.
 "I woke up about 8:30 a.m. the next morning. I went outside to where my car was. I was going to change tires on my car. I opened my trunk and there sat the T.V. I didn't know where it came from, and I didn't know what to do. So, I took it around to Bobby's house. I wanted to see if he knew anything about it. He didn't. So, I went back home. Then Roy Smith came to my house. I told him about the T.V. We tried to think who put it in my trunk. Me and him decided to ride down to Winston's so we could see Todd Sasser, and see if he knew anything about it. He was gone. So, we didn't see him. We went back to my house. Roy then left, then I took the T.V. back to Bobby's house. I asked him if he wanted it. He asked me if it was hot. I told him I didn't know. I didn't even know where it came from. He asked me how much I wanted for it. I told him he could just have it. I didn't want to have nothing to do with it. So, he just gave me fifteen dollars ($15.00), and I left and went back home."
At the conclusion of the State's case appellant moved for a directed verdict on the ground the State had failed to prove every aspect and essential element of the crime charged against him. This motion was overruled.
Charles Smith testified in behalf of the defendant. He stated that he first saw the defendant at Winston's Grocery around 4:30 p.m. on November 26, 1977, and they remained there about an hour and thirty minutes; that his brother Roy Smith was with him at the time. The trio left and went to King's Den in Opp and stayed there until about 10:00 p.m. and left and he did not see the appellant any more that night.
On cross-examination he testified they all started drinking beer at the Grocery and they continued to drink beer at the King's Den. They had been drinking for more than four hours but appellant did not get drunk. He stated they did not go to the Barbecue Ranch that night and there was no discussion about a television set.
Roy Smith testified substantially to the same facts as his brother except that when they left the King's Den appellant left his car there and rode with him to the Four Sons where they continued to drink beer. Around 12:30 that night he drove appellant back to the King's Den to get his car and then he went home.
On cross-examination he testified that he, his brother and appellant started drinking beer at 2:30 p.m. on November 26, 1977, but that appellant did not get drunk. He further testified that the last time he saw appellant he was driving around the I.G.A. Store in the direction of the Barbecue Ranch on Highway 331.
Sonny Bozeman testified that he owned the King's Den and saw appellant and the Smith twins there around ten o'clock on the night of November 26, 1977. He stated appellant tried to borrow five dollars from him.
Appellant's mother and wife testified that he got home around 12:30 or 1:00 a.m. and went to bed; that he did not leave home again the rest of the night.
Appellant did not testify before the jury.
Appellant presents a rather novel defense concerning his acquisition and disposition of the stolen television set. According to his signed statement he opened the trunk of his car the morning after a drinking spree the afternoon and night before and found a television set. Instead of contacting officers of the law he sold the set to Bobby Edgar for $15.00. The undisputed testimony was the set was worth $325.00. It is also undisputed that the television set was stolen during a burglary some time during the night that appellant was drinking beer in one tavern after another.
In Character v. State, 51 Ala. App. 589, 287 So.2d 916, this Court held:
 "It is the law of this state that the unexplained possession of property does not raise the presumption that the property was stolen. There must be other *Page 1170 
evidence of the corpus delicti. When this has been shown, and the stolen property, soon after the offense, is found in possession of a person, who is unable to give a satisfactory explanation of his possession, then the jury is authorized to infer his guilt. Orr v. State, 107 Ala. 35, 18 So. 142; Buckles v. State, 291 Ala. 352, 280 So.2d 814 (1972).
 "The requisite scienter for the crime of receiving stolen property may be inferred from the recent possession of stolen goods. Stanley v. State, 46 Ala. App. 542, 245 So.2d 827.
 "In Buckles, supra, our Supreme Court cited with approval the following quotation from the case of Aron v. United States, 8 Cir., 382 F.2d 965, 970:
 `The doctrine that possession of recently stolen property gives a permissible inference of knowledge on the part of the possessor that the property had been stolen, unless the possession thereof is accounted for in a reasonable and satisfactory manner consistent with the circumstances of the possession, is a factually sound and a necessary evidentiary rule. Without this evidentiary rule in criminal cases it would be almost impossible to consider for conviction any of the possessors or fences of stolen property unless they admitted that they knew the property to be stolen, which is an admission not likely to be forthcoming.'"
Scienter is an element of proof necessary to sustain a conviction of receiving stolen property, but scienter may be inferred by the jury from the facts and circumstances of the entire transaction. Bills v. State, 49 Ala. App. 726,275 So.2d 706; Paul v. State, 48 Ala. App. 396, 265 So.2d 180.
The corpus delicti may be proven by circumstantial evidence as well as by direct proof. Johnson v. State, 41 Ala. App. 351,132 So.2d 485; Matthews v. State, 42 Ala. App. 406,166 So.2d 883.
Where there is legal evidence from which the jury can by fair inference find the defendant guilty, this Court has no right to disturb the verdict. Whether there is such evidence is a question of law, its weight and probative value are for the jury. Haggler v. State, 49 Ala. App. 259, 270 So.2d 690; Pricev. State, 53 Ala. App. 465, 301 So.2d 230; Vines v. State,57 Ala. App. 117, 326 So.2d 307.
The possession of property recently stolen does not raise a presumption or inference, as a matter of law, of the guilt of the possessor, but the presumption arising from such possession is a matter of fact to be passed on by the jury. Vines v.State, supra.
We have carefully examined the record for errors injuriously affecting the substantial rights of the appellant and have found none.
The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.