910 So.2d 811 (2005)
Roger Dean OSBORN
v.
STATE of Alabama.
CR-03-1992.
Court of Criminal Appeals of Alabama.
March 18, 2005.
*812 Roger Dean Osborn, pro se.
Troy King, atty. gen., and Jean A. Therkelsen, asst. atty. gen., for appellee.
COBB, Judge.
On November 19, 2002, Roger Dean Osborn was convicted of second-degree receiving stolen property, a violation of § 13A-8-18(a)(1), Ala.Code 1975. The trial court sentenced him, as a habitual offender with 6 prior felony convictions, to 25 years in prison. See § 13A-5-9(c)(1), Ala.Code 1975. This appeal followed.[1]
The facts adduced at trial indicate as follows. On January 29, 2001, the victim discovered that a deer-hunting bow, a release, arrows, two bow cases, and two folding chairs were missing from his utility room. On that same day, a friend of the victim was approached by Osborn, who was trying to sell the stolen hunting equipment. The victim's friend recognized the bow and purchased the hunting equipment from Osborn for $60 in order to recover the gear for his friend. The friend identified Osborn as the person who sold him the victim's stolen hunting equipment. The victim recovered the bow, the arrows, and the two bow cases.
*813 Osborn raises several arguments on appeal.[2] Because we reverse Osborn's conviction and order a new trial on the basis of Osborn's first argument, we do not address the other arguments raised in his brief on appeal.
Osborn argues that the trial court erred by denying his motion to exclude the State's evidence and his motion for a judgment of acquittal. Specifically, he contends that the trial court erroneously allowed the admission of evidence of a 1999 conviction in Arizona for theft by control and/or by controlling stolen property. Before trial, Osborn objected to the admission of the evidence of the 1999 conviction on the grounds that he had not been given notice of the State's intent to admit evidence of the prior conviction; that the 1999 conviction was "not... a final conviction ... that would satisfy the requirements of law and due process" (R. 10); and that "the damage [from introducing evidence of the 1999 conviction] outweigh[ed] any possible probative value that would go toward the issue of intent or knowledge as far as the instant crime is concerned." (R. 10.) The trial court allowed evidence of the prior conviction to be admitted to prove "the element of knowing." (R. 10.) Osborn also objected when the evidence of the prior conviction was admitted. (R. 60.) The trial court overruled the objection and stated to the jury: "That evidence goes to the sole issue of knowledge of the defendant which the State is required to prove and goes to the sole issue of intent." (R. 61.) Osborn later moved to exclude the State's evidence and for a judgment of acquittal; the trial court denied the motion. (R. 63.)
On appeal, Osborn argues that he was prejudiced by the admission of the prior conviction, that the State's burden of proof was lessened by the admission of the prior conviction, and that he would have been entitled to an acquittal had it not been for the admission of the prior conviction because the State would have been unable to prove his "`[guilty] knowledge.'" (Osborn's brief, p. 18.) (Alteration in original.)
"The question of admissibility of evidence is generally left to the discretion of the trial court, and the trial court's determination on that question will not be reversed except upon a clear showing of abuse of discretion." Ex parte Loggins, 771 So.2d 1093, 1103 (Ala.2000). Rule 404(b), Ala. R. Evid., provides:
"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial."
The Alabama Supreme Court addressed a similar claim in Ex parte Casey, 889 So.2d 615 (Ala.2004). In Casey, the Court held that, during Casey's prosecution for multiple theft and receiving stolen property charges, the trial court's decision to allow the admission of evidence of Casey's 1995 convictions for theft of property and *814 unauthorized use of a credit card violated the general exclusionary rule of Rule 404(b), Ala. R. Evid. The Court discussed relevant caselaw in detail. We find the discussion and ensuing logic to be instructive and binding in this case:
"`The general rule is that in criminal prosecutions, evidence of prior criminal acts is not admissible since the only facts to be laid before the jury should consist exclusively of the transaction which forms the subject of the indictment, and which alone the defendant is called on to answer.
"`This rule, however, is subject to some well recognized exceptions. Evidence of other distinct criminal acts is admissible when relevant to the crime charged, as bearing on scienter, intent, motive, res gestae, or to establish the identity of the accused.... The authorities also recognize such an exception to show system or plan usually to identify the accused or to show intent. But even under the exceptions noted they or one of them is admissible only when the evidence is relevant to the crime charged.
"`Stated another way, the State is not permitted to give in evidence other crimes alleged to have been committed by the defendant unless they are so connected by circumstances with the particular crime charged as that proof of one fact with its circumstances has some bearing on the issue on trial other than to show in the defendant a tendency or disposition to commit the crime with which he is charged.

"`The court as early as 1864, in Ingram v. State, 39 Ala. 247 [(1864)], reversed the trial court for its instruction to the jury to limit its consideration of prior acts of distilling "in aggravation of the fine but for no other purpose." The Ingram case mentions as inadmissible evidence of other distinct crimes when not related to the crime charged except where such evidence is "offered to prove scienter, or intent, or motive, or to make out the res gestae, or to establish identity." 39 Ala. [at] 253. That case did not mention all of such exceptions, but we have noticed them above.
"`....
"`In Mason v. State, [259 Ala. 438, 66 So.2d 557 (1953)], the defendant was on trial for the offense of robbery. The State was permitted to prove that about the same time the defendant had committed several other robberies on other people and establishments. The court in that case entered into a lengthy discussion of the various exceptions to the general rule and the relevancy of evidence sought to be brought under them. We see no good purpose in an elaborate discussion of these exceptions now. (They are noted in the cases we cite.) In concluding that the evidence was inadmissible the court stated:
"`"As we see it the testimony in the present case shows four distinct and separate crimes which had no connection with each other except in point of time and except that according to the evidence the defendant committed each robbery. We believe from a full and complete consideration of the matter that the allowance in evidence of proof of the other crimes, to which we have referred, was highly prejudicial and harmful to the appellant."
"`The [murder] case at bar is quite different from such cases as McKenzie v. State, 250 Ala. 178, 33 So.2d 488 [(1947)], where on trial for assault with intent to rape, the prosecution was permitted to show that about the same time the defendant had taken another victim to the same place under the same circumstance, *815 and making the same pretenses, had committed an assault on this second victim, as tending to show the criminal intent with which he committed the assault on the person in the case under trial. This court there observed:
"`"And this principle is emphasized in the instant case by the further fact the proof as to the attack on Mrs. Outlaw followed the like pattern or technique as to Miss Eddins [prosecutrix], that is, luring her to the same secluded spot and first making use of the pretense of a lost bracelet and the like." 250 Ala. [at] 180, 33 So.2d [at] 490.
"`....
"`... [W]e conclude that the proffered evidence in the instant [murder] case, of a separate and distinct criminal offense, in no way related to the crime charged, and not coming within any of the exceptions noted, was erroneously admitted. As we see it, its only effect was to show defendant's character as a man who had been previously guilty of another and entirely distinct robbery. This cannot be done. Mason v. State, supra.'
"Garner v. State, 269 Ala. 531, 533-34, 114 So.2d 385, 386-87 (1959) (some citations omitted; emphasis added). This Court also said, in Harden v. State, 211 Ala. 656, 658, 101 So. 442, 443 (1924):
"`It is the law that distinct criminal acts, having no connection with [the charged offense], and shedding no light on defendant's connection therewith, are inadmissible. Such testimony may tend to create an atmosphere upon the trial highly injurious to defendant. Care should always be taken not to convict a man of one alleged crime because he has been guilty of another.'
"In Mason v. State, 259 Ala. 438, 66 So.2d 557 (1953), a robbery case, this Court opined:
"`Where knowledge is an essential element of the crime charged, proof of other crime[s] is admissible if they tend to show that the defendant in the case on trial had such knowledge. For example, if the crime charged was receiving stolen goods, evidence that the defendant had previously received stolen goods from the same thief is admissible. The evidence of other crimes in the case at bar can have no connection with knowledge. There was no attempt by proof of the other crimes to show that the defendant knew that Ernie Gilbert had money or that the defendant knew anything that would aid him in the alleged robbery for which he was on trial.

"`Is the evidence of the other crimes relevant to show the intent of the defendant in the case on trial? ...
"`"...."
"`... In order to be relevant on the theory of intent, evidence of the robberies against C.W. Fisher, Albert Schwartz and Chesley Hazlett, must have some connection with the crime charged. There was no such connection. In none of the three other crimes did the witnesses make any statement which would indicate that the defendant robbed Ernie Gilbert [the victim of the charged robbery] or that he had an intent to rob him.'
"259 Ala. at 441, 66 So.2d at 559 (citations omitted; emphasis added). Similarly, in Hunter v. State, 802 So.2d 265 (Ala.Crim.App.2000), the Court of Criminal Appeals held that the admission of evidence that the defendant had committed a prior collateral robbery into the trial of robbery and assault charges *816 against the defendant violated the general exclusionary rule. The Court of Criminal Appeals said:
"`Given that intent may be inferred from the nature of the [charged] assault and the robbery and that the circumstances surrounding the collateral robbery were substantially different from the present case, evidence of the collateral robbery in the cemetery was not admissible as tending to prove intent. The prejudicial impact of Crawford's testimony of the collateral robbery, particularly in light of the fact that the testimony was unnecessary, substantially outweighed any probative value.'
"802 So.2d at 269.
"Likewise, `[s]cienter is an element of proof necessary to sustain a conviction of receiving stolen property, but scienter may be inferred by the jury from the facts and circumstances of the entire transaction.' Wilson v. State, 361 So.2d 1167, 1170 (Ala.Crim.App.1978). Explaining the exclusionary rule in a receiving-stolen-property case, Karr v. State, 491 So.2d 1073 (Ala.Crim.App.1986), the Court of Criminal Appeals said:
"`The general exclusionary rule prevents "the introduction [into evidence] of prior criminal acts by the accused in a prosecution for receiving stolen goods when such acts have no relevancy except as tending to show his bad character." C. Gamble, McElroy's Alabama Evidence § 70.01(23) (3d ed.1977). A primary exception to that rule is that evidence of the prior crimes is admissible if relevant to prove the requisite intent, knowledge, or scienter. "As tending to show such knowledge or reasonable grounds to believe, the State may introduce prior instances of the defendant's receiving other stolen property from the same thief while knowing they were stolen." C. Gamble, McElroy's Alabama Evidence § 70.01(23) (3d ed.1977).'
"491 So.2d at 1075 (some emphasis original; some emphasis added). In Karr, the defendant was indicted and tried for first-degree receiving stolen property for his purchase of lumber from a certain thief, John Pate, who had purported to purchase the lumber with a worthless check. Over the defendant's objection, the trial court allowed testimony from Pate to the effect that, a year before the charged offense, Pate had sold the defendant other lumber which Pate had also obtained with a worthless check. On appeal of the defendant's conviction, the Court of Criminal Appeals held that Pate's testimony to his previous dealing with the defendant was admissible to prove the requisite scienter in the defendant for the charged offense of receiving stolen property, `from the same thief,' Pate. Id.

"The consistent converse of Karr is the case of Stephens v. State, 53 Ala.App. 371, 300 So.2d 414 (1974), which controls the case now before us. In Stephens, the defendant was indicted, tried, and convicted of receiving stolen guns from two thieves, who are named in the opinion. During the trial, and over the defendant's objection, the State introduced evidence that, on another occasion, the defendant had bought other stolen guns from other thieves. Concluding that the admission of such testimony was reversible error, the Court of Criminal Appeals held:
"`To show scienter of receiving stolen goods, proof of other like offenses must be confined to proof of purchases from the same thief from whom the alleged receiver got the *817 goods laid in the indictment sub judice.
"`....
"`Without question, the admission of this testimony was prejudicial, adding increments of unrelated guilt to the weighing pans of the scales of justice.'
"Stephens, 53 Ala.App. at 372-73, 300 So.2d at 415. Accord Sledge v. State, 40 Ala.App. 671, 122 So.2d 165 (1960), to precisely the same effect because the collateral bad act supplied the defendant with no knowledge that would have contributed to the knowledge or intent to be proved against him in the case being tried.
"In the case now before us, the admission of evidence of Casey's 1995 convictions violates the general exclusionary rule of Rule 404(b). The record, which contains none of the factual specifics of the defendant's prior convictions, discloses no logical connection between his prior theft or his prior unauthorized use of a credit card and his knowledge of the presence, ownership, or stolen character of any of the items he was being tried for receiving in the case now before us. That is, the defendant's mere knowledge that the property he previously had been convicted of stealing or the credit card he had previously been convicted of using without authority belonged to some other persons would not, in the absence of some evidence of connecting facts, supply the defendant with knowledge of the presence, ownership, or stolen character of items found five years later in his girlfriend's apartment and car and would not enable him to differentiate between items there which were stolen and items there which were not stolen. In other words, the record reveals no identity or connection between what the defendant knew or learned in his prior crimes and what he knew or learned about the items in his girlfriend's apartment or car.
"Likewise, except for the tendency, condemned by Rule 404(b), `to show action in conformity therewith,' the record before us discloses no logical connection between what the defendant intended with the property or the credit card of his prior convictions and what, if anything, the defendant intended with the myriad of items, stolen and not stolen, in his girlfriend's apartment, in her car, or indeed in any of the places the defendant might have frequented. That is, the record discloses no identity or connection between the defendant's intent in his prior crimes and his intent in his girlfriend's apartment or car or his intent anywhere else, except to the extent of the suggestion, forbidden by Rule 404(b), that, since he had harbored the dishonest intent that constituted essential elements of his prior crimes, he must have harbored the dishonest intent that constituted essential elements of the crimes charged in the case now before us.
"Karr, supra, is instructive, and Stephens and Sledge, supra, are analogous and controlling. In Karr, the defendant's prior bad act of buying stolen lumber from `the same thief' and the defendant's prior knowledge or acquisition of knowledge that that lumber had been stolen supplied him `reasonable grounds to believe' that the lumber he later bought from that `same thief' was stolen. Thus the prior bad act logically tended to prove the scienter that is an essential element of receiving stolen property. § 13A-8-16(a). Conversely, in Stephens, the defendant's prior bad act of receiving stolen guns from two thieves, and the defendant's knowledge or acquisition of knowledge that those guns had been stolen, did not supply him *818 with knowledge that other sellers of other guns the defendant later bought were also thieves who had stolen the latter guns. Accord, Sledge, supra. So, in the case now before us, the defendant's prior convictions, admitted into evidence without any particularized facts to connect them with the offenses being prosecuted, did not logically tend to prove scienter within any of the exceptions to the exclusionary rule now embodied in Rule 404(b)."
Casey, 889 So.2d at 618-21. (Emphasis in Casey.)
As was the case in Casey, the record here reveals that evidence of Osborn's 1999 conviction in Arizona for theft by control and/or by controlling stolen property was admitted without any particularized facts to connect it to the offense being prosecuted. That is, nothing in the record indicates that Osborn's 1999 Arizona conviction concerned the same stolen property, the same victim, the same geographical area, etc. Accordingly, the trial court erred in allowing the State to present evidence of Osborn's 1999 Arizona conviction for theft by control and/or by controlling stolen property.
"`[B]efore the reviewing court can affirm a judgment based upon the "harmless error" rule, that court must find conclusively that the trial court's error did not affect the outcome of the trial or otherwise prejudice a substantial right of the defendant.' Ex parte Crymes, 630 So.2d 125, 126 (Ala.1993) (emphasis omitted). "`The basis for the [exclusionary] rule lies in the belief that the prejudicial effect of prior crimes will far outweigh any probative value that might be gained from them. Most agree that such evidence of prior crimes has almost an irreversible impact upon the minds of the jurors.'" Ex parte Cofer, 440 So.2d 1121, 1123 (Ala.1983), quoting C. Gamble, McElroy's Alabama Evidence § 69.01(1) (3d ed.1977), also quoted in Hobbs v. State, 669 So.2d 1030, 1032 (Ala.Crim.App.1995).
"`The State has no absolute right to use evidence of prior acts to prove the elements of an offense or to buttress inferences created by other evidence. Evidence of prior bad acts of a criminal defendant is presumptively prejudicial to the defendant. It interjects a collateral issue into the case which may divert the minds of the jury from the main issue. Kilpatrick v. State, 51 Ala.App. 352, 285 So.2d 516 (1973), cert. denied, 291 Ala. 628, 285 So.2d 525 (1973). Therefore, the admission of such evidence constitutes reversible error. Hinton v. State, 280 Ala. 48, 189 So.2d 849 (1966).'
"Ex parte Cofer, 440 So.2d at 1124. "`The tendency of such evidence [of another and distinct crime] to work great injury to the accused renders its admission reversible error, unless it is brought within one of the exceptions recognized by law."' Hinton v. State, 280 Ala. 48, 52, 189 So.2d 849, 850 (1966)."
Casey, 889 So.2d at 621-22.
In evaluating whether this error could be considered harmless, we note that the trial court gave a limiting instruction to the jury. The trial court stated:
"That evidence [of the 1999 Arizona conviction] goes to the sole issue of knowledge of [Osborn] which the State is required to prove and goes to the sole issue of intent. The State is required to prove as an element of its offense the intent of the defendant not to restore the property in question to its owner. You may consider this prior court action and this prior jury verdict of guilty in that case solely on those two issues of intent and knowledge of [Osborn]. When I explain the law, I'll talk about *819 intent and knowledge. You may not consider this jury verdict finding [Osborn] guilty [of the 1999 crime when considering] the ultimate issue in this case or in any manner indicating [Osborn] committed this offense solely based on a prior conviction. You may not consider it in that manner. You may only consider it on the issues of intent and knowledge in this case."
(R. 61-62.)
In Casey, the Alabama Supreme Court addressed a similar limiting instruction and held:
"The `limiting' instruction given by the trial court to the jury did not ameliorate the prejudicial effect of the erroneous admission of the defendant's prior convictions. Indeed, the instruction contradicted itself and exacerbated the prejudice. While the trial judge told the jurors they could not consider the prior convictions `as evidence that [the defendant] committed the now-charged crimes,' the trial judge, in the same breath, told the jurors they could consider the prior convictions `as evidence of the elements of knowledge and intent' (emphasis added) of the now-charged crimes, and thus, in legal and practical effect, that they could consider the prior convictions `as evidence that [the defendant] committed the now-charged crimes.' In other words, considering the prior convictions as evidence of the elements of `the now-charged crimes' is the same as considering the prior convictions as evidence of the commission of `the now-charged crimes.'"
Casey, 889 So.2d at 622.
As did the Supreme Court in Casey, we hold that the limiting instruction allowed the jury to consider the 1999 prior conviction to prove the "elements" of knowledge and intent; therefore, the limiting instruction did not render the error harmless.
Evidence of Osborn's prior conviction was inadmissible, and its admission was prejudicial. The error was not rendered harmless by the trial court's limiting instruction. Therefore, the conviction now before us must be reversed and the case remanded for a new trial.
REVERSED AND REMANDED.
McMILLAN, P.J., and SHAW, J., concur.
BASCHAB, J., concurs specially, with opinion, which WISE, J., joins.
BASCHAB, Judge, concurring specially.
Based on the Alabama Supreme Court's decision in Casey and the particular facts of this case, I am compelled to agree with the majority opinion. However, I write specially to urge the Alabama Supreme Court to revisit and to overrule or, alternatively, limit the application of Casey.
First, it appears that the restrictive language in Casey is inconsistent with the broad language of Rule 404(b), Ala. R. Evid., and its nonexhaustive list of other purposes for which evidence about collateral acts may be admitted against a defendant. This apparent inconsistency could be caused by the fact that many of the cases upon which the Alabama Supreme Court relied in Casey were decided many years before Rule 404(b), Ala. R. Evid., was adopted.
Second, the decision in Casey could be read to require that the factual specifics of collateral acts be admitted into evidence in a subsequent prosecution. However, Rule 404(b), Ala. R. Evid., does not include such a requirement. In fact, in many instances, admitting such facts into evidence during a trial for a subsequent offense would be even more prejudicial to a defendant than simply admitting evidence that the defendant had committed a particular collateral act.
*820 For these reasons, the Alabama Supreme Court should overrule Casey. Rather than attempting to establish a bright-line rule for the admissibility of collateral act evidence, the Alabama Supreme Court should hold that the admissibility of collateral act evidence should be determined on a case-by-case basis after evaluating its relevance using Rule 401, Ala. R. Evid., and applying the balancing test set forth in Rule 403, Ala. R. Evid.
Alternatively, like the cases in which collateral act evidence is admitted for the limited purpose of establishing identity, the Casey decision should be limited to those cases in which collateral act evidence is admitted for the limited purpose of establishing knowledge. See Ex parte Baker, 780 So.2d 677 (Ala.2000); Stegall v. State, 628 So.2d 1009 (Ala.Crim.App.1993); Bighames v. State, 440 So.2d 1231 (Ala.Crim.App.1983). Also, the holdings in Casey that the error was not harmless and that the trial court's limiting instruction was not sufficient to ameliorate the harm should be clarified. Specifically, those holdings should not be read to mean that such an error could never be harmless or that a limiting instruction would never be sufficient to ameliorate the harm from such an error.
NOTES
[1] On January 27, 2003, this Court dismissed Osborn's appeal as untimely, noting that counsel's oral notice of appeal was not effective because it was not given at sentencing. Osborn, proceeding pro se, requested that this Court grant him a "new appeal." On May 21, 2003, this Court advised Osborn that a Rule 32, Ala. R.Crim. P., petition was the only means to obtain an out-of-time appeal. Osborn filed a Rule 32 petition, which the circuit court granted. Osborn is before us on a pro se out-of-time appeal granted by virtue of that petition.

Notably, this case is unlike the Alabama Supreme Court case of Marshall v. State, 884 So.2d 900 (Ala.2003), in that Osborn is not requesting an out-of-time appeal from the dismissal or denial of a postconviction petition. Rather, Osborn correctly employed a Rule 32 petition to request an out-of-time direct appeal based on his assertion that he failed to appeal his conviction and sentence within the prescribed time through no fault of his own. Rule 32.1(f), Ala. R.Crim. P.
[2] Osborn also appears to raise other issues in his reply brief and supplemental reply brief. We do not address any of those issues, however, because "new issues may not be raised for the first time in a reply brief. Hazelrig v. Thomas, 291 Ala. 659, 286 So.2d 830 (1973)." McCall v. State, 565 So.2d 1163, 1167 (Ala.Crim.App.1990).